## NATIONAL LABOR RELATIONS BOARD v. PRATT, READ & CO., Inc.

### No. 18, Docket 22005.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1951.

Decided Nov. 2, 1951.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Arnold Ordman, all of Washington, D. C., and Nancy M. Sherman, Washington, D. C., for the National Labor Relations Board.

Shipman & Goodwin, Hartford, Conn. (Walfrid G. Lundborg, Hartford, Conn., and James H. Gould, New London, Conn., of Counsel), for respondent.

Before AUGUSTUS N. HAND, CHASE and WOODBURY, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order, issued July 28, 1950, against the respondent, Pratt, Read & Co., requiring the latter to cease and desist from discouraging membership in any labor organization by discriminating against its employees with respect to their employment, or from in any other manner interfering with, restraining, or coercing them in the exercise of the rights guaranteed by Section 7 of the National Labor Relations Act, as amended by Labor Management Relations Act of 1947, 29 U.S.C.A. § 157; to reinstate and make whole six employees held to have been discriminatorily discharged; and to post appropriate notices at its plant. The respondent opposes only that portion of the order which requires reinstatement of the discharged employees with back pay; the objection raised by respondent is that the findings and conclusions of the Trial Examiner, adopted by the Board in its decision and order, are unsupported by substantial evidence as required by Section 10(e) of the Act, 29 U.S.C.A. § 160(e).

The Trial Examiner found that the six employees in question were discharged because of their continued activities on behalf of the CIO. The pertinent facts relating to the discharges were as follows: For several years prior to 1948, Local 105, United Furniture Workers of America, CIO (hereinafter called CIO), had been recognized by the respondent as the exclusive bargaining agent of its employees, and collective bargaining agreements were executed between the CIO and the respondent. The last of those agreements would expire on October 1, 1948. Commencing in the spring of that year, the Upholsterers' International Union, AFL (hereinafter called AFL), engaged in organizational activities among the respondent's employees. On July 26, 1948, the respondent announced that it was terminating its contract with the CIO effective October 1, 1948, and that it would no longer recognize the CIO as the bargaining representative of its employees until such time as the CIO was certified by the N.L.R.B. This notice was within its rights. In August of 1948, the respondent discharged the secretary-treasurer of the

CIO and several of its executive board members. The CIO filed a grievance under the prevailing collective bargaining agreement on behalf of these employees, but the respondent refused to arbitrate and it does not appear that they were ever reinstated. While the Board did not institute any unfair labor practice charge against the respondent for the discharge of these employees and was not requested to do so, nevertheless these discharges bear upon the respondent's motives for the discharges here in issue.

On August 17, 1948, the AFL filed a representation petition with the Board, and on August 31, 1948, the respondent signed an agreement with the AFL for a consent election. Since the CIO was ineligible to appear on the ballot for having failed to file affidavits with the Board as required by Section 9(h) of the Act, 29 U.S.C.A. § 159 (h), the sole purpose of the election was to determine whether the employees desired the AFL as its collective bargaining representative. Both the AFL and the CIO conducted pre-election campaigns, and there is evidence in the record that the respondent, by an announcement dated September 3, 1948 and through statements made by its foremen, supported the AFL and was hostile to the CIO. On September 14, 1948, the AFL won the election and that union was certified as the exclusive bargaining representative on September 22, 1948.

The six employees whom the Board ordered reinstated were members of the CIO, and, with the exception of Mencuccini, were or had been stewards or officers in that union. Despite the results of the certification election, the six employees announced their intention to campaign for the restoration of the CIO as the bargaining agent of the respondent's employees. Near the end of the work-day on Friday, October 1, 1948, the expiration date of the CIO contract, these six employees each received an envelope containing a notice from the respondent of his or her discharge as an "unsatisfactory employee." No other reason for their discharges was given, and there was testimony by one of the respondent's foremen in charge of some of these employees that he had not recommended their

discharge. There is evidence that other employees besides these six were discharged on that day and the Board so found. One of the six discharged employees, Fosque, was reemployed by the respondent in October 1949 on the condition that she waive any claim for back pay arising from the unfair labor practice charge she had filed with the Board and that she forego any seniority she had previously accumulated. The Trial Examiner found that Fosque had not been offered full or equivalent reinstatement with all rights and privileges and respondent has not contested this finding.

If, as the Trial Examiner and the Board found, the six employees were discharged because of their CIO union activities, such activities would not have justified their discharge since the Act did not forbid voluntary recognition of the CIO as the bargaining agent by the respondent. See American Communications Ass'n v. Douds, 339 U.S. 382, 385–386, 70 S.Ct. 674, 94 L.Ed. 925; Developments in the Law—The Taft-Hartley Act, 64 Harv.L.Rev. 781, 793.

The respondent sought to justify discharging rather than laying off these six employees on the ground that they were for various reasons unsatisfactory in their work. In respect to Peterson, who was one of the leaders of the CIO union, the respondent proved that on several occasions in November and December, 1947, when the factory had gone on a fifty-five hour schedule, Peterson stopped working before the end of his workshift. Nevertheless though warned for this conduct, he was allowed to remain working during the rest of the year. Moreover, he testified that he had a bad leg and was not able to work overtime. He also testified that he had discussed the matter with his foreman and that the latter said "If you can't work, you can't work." His foreman did not deny making that statement and there was no other charge of absence from work.

Elmer Joy, who was a union departmental steward and a member of the organizing committee, had violated factory rules by smoking while on duty, by making a cribbage board on company time, by removing a notice posted by the company, and by an unsatisfactory attendance record. He had

been warned for these things and had committed no infractions after the last of the warnings and apparently had remained a satisfactory employee.

Mencuccini was an employee active in espousing the cause of the CIO union who was said to have indulged in unnecessary political arguments which had nothing to do with the business of the respondent. His work had been satisfactory and there was credible evidence that he had never been complained of by his foremen or warned prior to his discharge.

Fosque, the next of the six discharged employees, was a union shop steward who was said to have unduly failed to report for work. Nevertheless, she offered the excuse of illness and Wilson, respondent's personnel manager, had previously testified before the Connecticut Unemployment Commission that he had never warned Fosque about her attendance, and he continued her employment as indeed he had that of others with inferior attendance records throughout the period of the contract.

Lucille Smith, an executive officer in the CIO union, was said to have been discharged because of a poor attendance record. Wilson, the personnel manager, testified, however, that the last warning he had given her was at least a year and a half prior to her discharge.

As to Bishop, the last of the six, who held the position of steward, no explanation for her discharge was offered by the respondent, and there was testimony that her work had never been complained of nor had any warning been issued to her. In fact, the respondent's assistant superintendent testified that she was a good worker.

■ The notice filed by the respondent and directed to advising its employees as to their rights to select the CIO as their bargaining agent was undoubtedly partial and misleading. While the respondent was not obliged under the Act to bargain with the CIO union when the latter had not filed non-Communist affidavits, respondent's employees could select the CIO union to advise them as to their conduct such as projected strikes and as to unfair labor practices on the part of the respondent. Never-

theless, the notice on the whole indicated that if the employees did not select the AFL union they would have no union representing them.

Moreover, the respondent's foremen threatened the employees with a closing down of the local business and removal of the plant and a loss of employment if they did not vote for the AFL.

■■ Against this background of active support of the AFL union, and a doubtful claim that the six employees were discharged because of their incapacity—a claim which the Examiner and the Board found inconsistent with the proof—we think the Board was justified in finding that the real cause of the discharge of the six employees was not their inadequacy as workers but was their adherence to the CIO union. That adherence, as we have already stated, was not a sufficient ground for their discharge, but indeed was a violation of their rights under the Act which entitled them to the relief ordered by the Board.

For the foregoing reasons the order of the Board should be enforced.

Enforcement granted.