ROCK–HILL–URIS, INC. and Hilton Hotels Corporation, Plaintiffs,

v.

Ivan C. McLEOD, as Regional Director of the National Labor Relations Board, Second Region, Defendant.

United States District Court
S. D. New York.

Dec. 11, 1964.

Drechsler & Leff, New York City, for plaintiffs. Sidney Orenstein, New York City, of counsel.

Arnold Ordnan, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, George H. Cohen, Attys., N. L. R. B., Washington, D. C., and Samuel M. Kaynard, Regional Atty., N. L. R. B., Region 2, New York City, for defendant.

Cohn & Glickstein, New York City, for New York Hotel Trades Council and Office Employees International Union, Local No. 153 AFL–CIO, Ira Drogin, New York City, of counsel.

Benenson & Israelson, New York City, for Security and Protective Employees Union, Local 238, Building Service and Employees International Union, AFL–CIO, Aaron Benenson, Arnold Streit, New York City, of counsel.

WEINFELD, District Judge.

The plaintiffs seek to enjoin an election scheduled to be held under the auspices of the Regional Director of the National Labor Relations Board to determine the collective bargaining representative, if any, of the security officers and watchmen employed at plaintiffs' New York Hilton Hotel. Specifically, they seek the exclusion of two unions from the ballot. The defendant cross-moves to dismiss the complaint for lack of subject matter ju-

risdiction and for failure to state a claim upon which relief may be granted. The election was originally scheduled for December 3rd, but was stayed by this Court pending determination of the jurisdictional issue.

This controversy arose when an individual employee [1] sought certification as the bargaining agent for plaintiffs' security officers and watchmen and petitioned the Board for an election. Two unions intervened in that proceeding. After hearings in which plaintiffs also participated as intervenors, the Regional Director ordered an election and directed that the names of the two unions as well as the individual appear on the ballot. The Board affirmed the Regional Director's decision whereupon this action was commenced.

Under Section 9(b) (3) of the National Labor Relations Act the Board is prohibited from certifying any labor organization "as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards." [2] It is not disputed that in the instant case the Board is foreclosed from certifying either union, since one admits nonguards to membership and the other is affiliated with locals which do so. Accordingly, the plaintiffs argue that the Board, by placing them on the ballot, has exceeded its statutory authority, and unless the unions are eliminated the prohibition against certification will be contravened and its purpose defeated.

The Board denies that its decision placing the two unions on the ballot circumvents the statute, which it construes as depriving a mixed guard and nonguard union only of the benefits of certification, not of the right to participate in a Board-conducted election.[3] It represents, and plaintiffs do not dispute, that it has no intention of certifying either union as the bargaining agent, "but in the event either should be successful, only the arithmetical results shall be certified." It asserts that its sole purpose in allowing the disqualified unions to appear on the ballot is to obtain a complete expression of the employees' preferences as to representation which will be beneficial to labor and management and thereby serve the cause of stable labor relations. To emphasize that such is its purpose and that its policy is one of compliance with and not in derogation of the spirit as well as the letter of Section 9(b) (3), the Board points to its own decisions against processing representation petitions [4] or refusal-to-bargain complaints [5] from labor organizations disqualified from certification.

Plaintiffs, on the other hand, construe Section 9(b) (3) not only to bar the "ministerial act" of certification, but also to prohibit the Board from extending to a disqualified labor organization any of the benefits of Board process, including a place on the ballot of a Board-conducted representation election.

The Congressional purpose of Section 9(b) (3) was to discourage representation by a single union of guards and nonguards of the same employer and to protect the latter from being compelled

1. § 9(c) of the National Labor Relations Act, 29 U.S.C. § 159(c), permits individuals to serve as bargaining representatives. See Grand Union Co., 118 N.L.R.B. 685 (1957).

2. 29 U.S.C. § 159(b) (3).

3. Cf. National Biscuit Division v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101, cert. denied, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037, (1959).

4. E. g., General Motors Corp., 77 N.L.R.B. 1029 (1948); Schenley Distilleries, Inc.,

77 N.L.R.B. 468 (1948). The Board distinguishes the present case on the ground that an election must at any rate be held at the behest of a candidate qualified for certification and, therefore, no additional resources need be expended to include on the ballot the names of disqualified candidates.

5. E.g., Mack Manufacturing Corp., 107 N.L.R.B. 209 (1953); City Nat'l Bank & Trust Co., 76 N.L.R.B. 213 (1948).

by Board action to bargain with such an organization.[6] In order to establish these objectives, the Congress foreclosed certification of such unions, thereby depriving them of the various benefits which flow from Board certification.[7] However, nowhere does the Act proscribe such a union from representing the guards. They retain the right to select a mixed union to represent them; the employer may voluntarily recognize such a union—as, in fact, the plaintiffs have in the instant case [8]—and may even be forced to do so by the exertion of the union's economic power.[9] Thus, while the statute forecloses certification by the Board of a disqualified union, it does not deprive the guards of the right granted under Section 7 "to bargain collectively through representatives of their own choosing." In this respect the situation is somewhat akin to that of a union which failed to qualify under former Sections 9(f), (g) and (h) [10] but, notwithstanding, could represent employees for collective bargaining purposes.[11]

██ I am persuaded that the Board's action in placing the two disqualified unions on the ballot for purposes of obtaining an arithmetical count is not in excess of its powers, nor does it either contravene the express prohibition contained in Section 9(b) (3) or, by indirection, circumvent the legislative purpose. Since guards have the right to designate their collective bargaining agent, even though it may be a union which the Board is proscribed from certifying, the ascertainment of the majority will is in the interest of stable labor relations. The precise manner in which that determination is to be made—in this instance by the use of the Board's election machinery to obtain the arithmetical results—is within the Board's competence and involves its sole discretion.[12] The Board here justifies its decision on the ground that to confine the ballot to the only candidate who qualifies for its certification and to exclude the unions would distort the selection process and interfere with the guards' freedom of choice to designate their representative, regardless of eligibility for Board certification. The result of an all-inclusive balloting, says the Board, is a more reliable index of electoral will than one limited to the sole qualified candidate.

The plaintiffs' argument against the Board's issuing the arithmetical count proves too much. As already noted, the

6. N. L. R. B. v. E. C. Atkins & Co., 165 F.2d 659, 660 (7th Cir. 1947); Mack Manufacturing Corp., 107 N.L.R.B. 209, 212 (1953).

7. Cf. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 75, 76 S.Ct. 559, 100 L.Ed. 941 (1956).

8. Plaintiffs voluntarily entered into a collective bargaining agreement with one of the unions it now seeks to exclude from the ballot under which the union—which admits nonguards to membership—represents plaintiffs' watchmen, although not their security officers.

9. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 74–75, 76 S.Ct. 559 (1956).

10. Formerly 29 U.S.C. § 159(f)-(h), repealed, 73 Stat. 525 (1959).

11. N. L. R. B. v. District 50, United Mine Workers; 355 U.S. 453, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958); United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 74–75, 76 S.Ct. 559 (1956).

Unlike § 9(b) (3), the former §§ 9(f) and (h) explicitly forbade the Board to investigate representation questions raised by noncomplying labor organizations. They were, therefore, sometimes viewed as barring noncomplying unions from the ballot in Board-conducted elections. American Communications Ass'n, CIO v. Douds, 339 U.S. 382, 390, n. 6, 70 S.Ct. 674, 94 L.Ed. 925 (1950) (dictum); N. L. R. B. v. Pratt, Read & Co., 191 F.2d 1006, 1008 (2d Cir. 1951) (dictum). Despite the statutory language, however, in N. L. R. B. v. District 50, United Mine Workers, supra, the Supreme Court suggested that: "Nothing in the subsections, for example, is a barrier to the conduct by the Board of an election not followed by a certification." 355 U.S. at 461, 78 S.Ct. at 391.

12. Cf. National Biscuit Division v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101, cert. denied, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959).

plaintiffs themselves have a collective bargaining agreement with one of the two intervenor unions that expires in June 1967.[13] Were the election to be cancelled, the other union is in a position to acquire status as the representative of the watchmen and guards by the nonelectoral process of obtaining authorizations from the employees who are so minded, and in which event the existing contract would not prevent the use of economic force upon the employer to compel recognition.

Absent any threat to certify a disqualified union, the wisdom of the Board's decision—for example, whether through connivance between qualified individuals and disqualified labor organizations the door is open to evasion of its own rule against processing election petitions of the latter unions—is beyond the pale of district court review.

█ The plaintiffs having failed to establish a direct violation of a "specific prohibition in the Act," [14] or even an indirect circumvention of one,[15] and there being no allegation here that the Board has deprived the plaintiffs of a constitutional right [16] or interfered with our Government's foreign relations,[17] the complaint must be dismissed for want of subject matter jurisdiction.

Not only have plaintiffs failed to overcome the jurisdictional hurdle, but in light of their existing contract with one of the ineligible unions whereby it represents their watchmen and in view of each union's ability to acquire status as collective bargaining agent by nonelectoral means, plaintiffs' right to the equitable relief is doubtful.

█ It should be noted that at the time the Court stayed the election scheduled for December 3rd, it expressed its concern that use of Board machinery and the official ballot's declaration that the purpose of the election was to select a collective bargaining representative might mislead the electorate into believing that each of the candidates appearing on the ballot was qualified for certification in the event it won. The problem has been met. The element of possible unfairness [18] has now been removed by the Board's addition to the Notice of Election of an announcement that neither union could be certified or Board process availed of to compel the employer to bargain with it, although the employees may choose such a union and the employer may negotiate with it."

Plaintiffs' motion for injunctive relief is denied, and defendant's motion to dismiss the complaint is granted.

---

13. See n. 8 supra.

14. Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

15. In light of this Court's conclusion that the Board's decision is perfectly consistent with the Congressional scheme, there is no need to decide whether a contrary finding would nevertheless be insufficient to invoke jurisdiction under Local 1545, United Bhd. of Carpenters and Joiners v. Vincent, 286 F.2d 127, 132–133 (2d Cir. 1960).

16. See Leedom v. International Bhd. of Elec. Wkrs., 107 U.S.App.D.C. 357, 278 F.2d 237 (1960); Fay v. Douds, 172 F.2d 720 (2d Cir. 1949).

17. See Empresa Hondurena de Vapores, S.A. v. McLeod, 300 F.2d 222, 226–229 (2d Cir. 1962), aff'd sub nom. McCulloch v. Sociedad Nacional, 372 U.S. 10, 16–17, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

18. On fairness in representation elections, see Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 53–56 (1964).