**ERIE COUNTY GERIATRIC CENTER**

v.

**LOCAL NO. 2666, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, et al.**

**Civ. A. No. 77–111 Erie.**

United States District Court,
W. D. Pennsylvania.

Dec. 28, 1978.

James K. McNamara, Erie, Pa., for plaintiff.

Jonathan K. Walters, Philadelphia, Pa., for defendants.

MEMORANDUM OPINION

KNOX, District Judge.

This action was removed from the Erie County Court of Common Pleas on August 9, 1977. On November 16, 1977, plaintiff's motion to remand was denied. Following discovery, the parties filed cross motions for summary judgment. Plaintiff's motion will be denied; defendants' motion will be granted.

On December 12, 1972, defendant Local No. 2666 was certified by the Pennsylvania Labor Relations Board (PLRB) to represent a bargaining unit "In a subdivision of the employer unit comprised of all nonprofessional employees employed by the Erie County Hospital [now the plaintiff] . . , excluding all supervisors, first-level supervisors, management and confidential employees and guards as defined in Act 195." See Exhibit 1 attached to Casey deposition. The parties do not dispute that the individual defendants in this case were employed as guards within the meaning of the PLRB certification from that date until their discharge in May 1977. On May 25, 1977, the National Labor Relations Board (NLRB) clarified the bargaining unit again to exclude security guards. See Exhibit A attached to Stipulated Facts. In between the date of the PLRB certification and the NLRB clarification, however, security guards were treated by the plaintiff and its predecessor as being members of the bargaining unit. Defendants now seek to arbitrate whether they are entitled to various benefits and seniority rights accrued but unused during the period between the PLRB certification and the NLRB clarification.[1]

---

1. At one point in their brief, defendants characterize their objective as seeking "to arbitrate . . . the right of those employees who have been removed from the bargaining unit to employ the seniority accrued thereunder to 'bump back' to the unit, in light of their seniori-

■ Plaintiff again attacks this court's jurisdiction. The court reads *St. Louis Mailers Union Local No. 3 v. Globe-Democrat Pub. Co.,* 350 F.2d 879 (8th Cir. 1965), cert. denied 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966), reh. denied 383 U.S. 931, 86 S.Ct. 927,. 15 L.Ed.2d 850 (1966), to include within the ambit of federal jurisdiction cases in which a claim is made to rights existing under a past or present labor agreement. This is particularly evident in light of the national policy favoring arbitration of labor disputes. See *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ Initially, the court notes that summary judgment may be granted only where there is no genuine issue as to any material fact. Further, all inferences and doubts must be resolved against the moving party. *Ely v. Hall's Motor Transit Co.* (3rd Cir., 1978) 590 F.2d 62.

In the instant case, plaintiff contends that since both the 1972 PLRB and the 1977 NLRB certifications excluded security guards from the bargaining unit, the guards were not parties to the contract and therefore can assert no rights thereunder. Alternatively, plaintiff maintains that even if defendants were treated by plaintiff as being members of the bargaining unit, any inclusion of them within the coverage of the collective bargaining agreement was void ab initio. Finally, plaintiff asserts that even if the individual defendants were treated as being members of the bargaining unit and such inclusion was lawful, Article 32 of the labor agreement automatically adjusted the contract to exclude them.

■ It is true that both the Pennsylvania statute (43 Pa.C.S.A. § 1101.604(3)) and the federal statute (29 U.S.C. § 159(b)(3)) pre-clude the certification by the PLRB or the NLRB of a bargaining unit which includes both security guards and other employees. Further, as a general rule bargaining agreements which are in violation of law or public policy are void ab initio. *Hairston v. McLean Trucking Co.,* 520 F.2d 226 (4th Cir. 1975).

■ In the instant case, the court finds that notwithstanding the 1972 certification by the PLRB of a bargaining unit which excluded security guards, the actions of the plaintiff and its predecessor in the negotiations with the union constituted a de facto inclusion of the guards in the unit for the purpose of coverage under the collective bargaining agreement. Specifically, James T. Casey, Personnel Director and Labor Negotiator for Erie during the time in question, testified in deposition that security guards were treated as members of the bargaining unit without dispute. (T. 7–8). Further, Angelo J. Criscione, Assistant Council Director for District Council 85, stated that the union committee that negotiated the initial contract included a security guard (T. 15) and that security guards (who were considered by the employer to be "watchmen") voted in the election conducted by the PLRB. (T. 16–17). Finally, a security guard was the president of the union at one time. (T. 7). Thus, the security guards were considered by the employer to be legal members of the bargaining unit.

Plaintiff's contention that since both the PLRB and the NLRB are precluded by statute from certifying a bargaining unit which includes both security guards and other employees the de facto inclusion in this case was contrary to law thereby rendering the collective bargaining agreement void ab initio is not well taken. It has been held that 29 U.S.C. § 159(b)(3) [2] (which is substantially identical to 43 Pa.C.S.A. § 1101.604(3)):

ty." (p. 12). Obviously, defendants cannot return to the bargaining unit unless they are employed by plaintiff in positions other than as security guards. Therefore, the court reads defendants' assertions to mean that they desire to have an arbitrator determine whether they are entitled to benefits, such as vacation pay, accrued but unused during the time they were treated as being included in the bargaining unit. Further, any defendant who has been rehired may wish to have the arbitrator determine whether he is entitled to employ the seniority rights accrued during that period.

2. This provision provides as follows:
    The Board shall decide in each case whether, in order to assure to employees the fullest

does not operate to prevent guard employees from joining a labor organization, and this principle extends to labor organizations which also represent non-guard employees. Indeed, the real significance of [§ 159(b)(3)] is the restrictions which it imposes on the Board. Specifically, [§ 159(b)(3)] provides two things: (1) the Board may not determine that a unit is appropriate for purposes of collective bargaining if the unit includes both guards and non-guards; and (2) the Board may not certify a union as bargaining agent for guards if that union represents both guards and non-guards.

If guard employees do join a union which also represents non-guards, their membership is not unlawful, and in fact an employer may, if it wishes, recognize such a union for purposes of collective bargaining. *N. L. R. B. v. White Superior Div., White Motor Corp.,* 404 F.2d 1100, 1103 (6th Cir. 1968). Accord, *N. L. R. B. v. Bel-Air Mart, Inc.,* 497 F.2d 322 (4th Cir. 1974); *Rock-Hill-Uris, Inc. v. McLeod,* 236 F.Supp. 395 (S.D.N.Y. 1964), aff'd 344 F.2d 697 (2nd Cir. 1965).

■ Although a bargaining unit which is not certified does not possess all of the rights of a certified labor organization, such as the right to have the NLRB process representation petitions or refusal-to-bargain complaints, *Rock-Hill-Uris, Inc. v. McLeod,* supra, it does retain the right to bargain with a consenting employer. As discussed previously, this court has determined that until the May 25, 1977 NLRB clarification, the employers in this case knowingly and voluntarily negotiated with a bargaining unit comprised of both security guards and other employees. Consequently, since only the *certification* of a mixed bargaining unit is unlawful, the ability of the security guards to join a mixed

bargaining unit which could not be certified legally and to bargain with a consenting employer is permissible. Therefore, the de facto inclusion of the guards in the bargaining unit, from which they were expressly excluded by the 1972 PLRB order, did not detract from their ability to bargain with the employer and to obtain benefits under the contract.

■ Finally, Article 32 of the collective bargaining agreement states:

A. Both parties hereto specifically agree that it is their intent that this agreement, under all circumstances and in every respect, shall comply with all applicable statutes, governmental regulations and judicial decisions, and if it shall be determined by proper authority that this agreement, or any part hereof, is in conflict with said statutes, governmental regulations or judicial decisions, this agreement shall be automatically adjusted to comply with the said statutes, governmental regulations or judicial decisions.

In the context of this case, all that this provision could have done would have been to decertify the mixed unit had it been certified, thereby permitting the employer to refuse to bargain with it. Since the combination unit was not certified, however, and since it is not unlawful for guards and non-guards to belong to the same uncertified labor organization and to negotiate with a consenting employer, the collective bargaining agreement was not in conflict with any law, regulation or decision and therefore did not require adjustment.

Plaintiff's supplemental brief argues that since the discharged defendants were offered an opportunity only to reapply for positions at the Center and not to return to

---

freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not . . . (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce

against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of the employees in a bargaining unit of guards if such organization admits to membership . . . employees other than guards.

the bargaining unit, "how can a person exercise any 'bumping rights' [into the bargaining unit] if that person is not employed by the employer?" p. 2 of Plaintiff's supplemental brief. As discussed previously, we read defendants' request for arbitration to mean that they wish to arbitrate (1) whether they are entitled to any accrued but unused benefits (such as vacation or sick leave pay) under the collective bargaining agreement for the period prior to the 1977 NLRB clarification and (2) whether they would be entitled to employ the seniority they had accrued should they be rehired to positions at the Center. Obviously, if the individual defendants are not employed by plaintiff or if they are employed as security guards, they cannot "bump back" into the bargaining unit for the purpose of obtaining future benefits since that unit, as certified by the NLRB, unquestionably excludes them. If, however, they are rehired to fill non-guard positions they may have a right to have their previously accrued seniority rights credited toward their new employment.

The collective bargaining agreement in question contains the following broad description of an arbitrable grievance: "A grievance is a dispute concerning the interpretation, application, or alleged violation of a specific term or provision of this agreement." See Exhibit C, Stipulated Facts. Although arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit, *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the contract in question is broad enough to include within the ambit of its arbitration clause the ability of the individual defendants to receive any benefits accrued but unused prior to the May 25, 1977 NLRB order and to employ their seniority rights upon rehire. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Recently, in *Nolde Bros., Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court held that the termination of a collective bargaining agreement does not automatically extinguish "a party's duty to arbitrate grievances arising under the contract." 430 U.S. at 251, 97 S.Ct. at 1072. The Court had held in *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) that "the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." 430 U.S. at 252, 97 S.Ct. at 1072. *Nolde Brothers* made it clear that the timing of the demand for arbitration is not dispositive. A union is permitted to assert its claim to arbitration after termination of the collective bargaining agreement as well as before. We find, as did the Court in *Nolde,* that "the parties did not intend their arbitration duties to terminate automatically with the contract." 430 U.S. at 253, 97 S.Ct. at 1073.

For the foregoing reasons, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted. The dispute concerning defendants' accrued but unused seniority rights and benefits should be submitted to arbitration consistent with this opinion.

An appropriate order will be entered.