NATIONAL LABOR RELATIONS BOARD *v.*
DISTRICT 50, UNITED MINE WORKERS
OF AMERICA, ET AL.

No. 64.   Argued January 6, 1958.—Decided February 3, 1958.

*Dominick L. Manoli* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin, Jerome D. Fenton, Stephen Leonard* and *Alice Andrews.*

*Crampton Harris* argued the cause for District 50, United Mine Workers of America, respondent. With him on the brief were *Yelverton Cowherd* and *Alfred D. Treherne.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The National Labor Relations Board found that Bowman Transportation, Inc., committed unfair labor practices by assisting District 50, United Mine Workers, as a means of defeating the efforts of a Teamsters Local to organize its workers.[1] The cease-and-desist order which issued was in the standard form directing the company to withdraw and withhold recognition from District 50 unless and until it received the Board's certification as the exclusive representative of the employees. 112 N. L. R. B. 387.[2] But the United Mine Workers is not in compliance with § 9 (f), (g), and (h), added by the Taft-Hartley amendments to the National Labor Relations Act, 61 Stat. 143, 29 U. S. C. § 159 (f), (g), (h).[3]

---

[1] The Teamsters Local was International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL, Local No. 612. The Board concurred in the Trial Examiner's findings that when the Teamsters Local was picketing the premises the company rendered illegal support and assistance to District 50 by negotiating the details of a contract with officials of that union before a single employee had actually authorized it as a representative, by showing the draft contract to the drivers at a meeting convened by and presided over by the company president, who assured them that if necessary he would advance the money for dues, after which, and within less than three hours, the drivers signed District 50 authorization cards, established a local which held its first meeting, at the president's suggestion, on company premises, and concluded a contract with the company.

[2] This remedy was apparently first adopted in *Lenox Shoe Co.*, 4 N. L. R. B. 372, 388, decided December 3, 1937.

[3] Subsection (f) provides that no investigation shall be made by the Board concerning the representation of employees raised by a labor organization, and no complaint of unfair labor practices shall be issued pursuant to a charge made by a labor organization, unless the organization and any national or international labor organization of which it is an affiliate or constituent shall have filed with the

It is therefore not eligible for a Board certification and in consequence the Bowman employees may never have an opportunity to select District 50 as their representative. The Board denied the United Mine Workers' application to delete the requirement for a Board certification. 113 N. L. R. B. 786. The question arises whether the requirement for a Board certification in these circumstances exceeds the Board's discretionary power under § 10 (c), 29 U. S. C. § 160 (c), to fashion remedies to dissipate the effects of an employer's unfair labor practices in assisting a union.

The union petitioned the Court of Appeals for the District of Columbia under § 10 (f), 29 U. S. C. § 160 (f), which authorizes a Court of Appeals to "enter a decree enforcing, modifying, and enforcing as so modified,

---

Secretary of Labor copies of the union's constitution and by-laws and a report showing, among other things, the names of officers and agents whose aggregate compensation and allowance for the preceding year exceeded $5,000, the amounts paid to each, the manner in which such officers and agents were selected, the amount of initiation fees and dues charged to union members, the union's procedures followed with respect to qualification for membership, election as officers and stewards, etc. The subsection also requires the filing with the Secretary of a report showing union receipts, disbursements, and assets and liabilities. Subsection (g) requires, among other things, the filing annually with the Secretary of reports bringing up to date the information required to be supplied under subsection (f). Subsection (h) provides that no investigation of a question of representation raised by a labor organization shall be made and no complaint of unfair labor practices pursuant to a charge made by a labor organization shall issue unless there is on file with the Board an affidavit executed within the preceding year by each officer of the organization and the officers of any national or international labor organization of which it is an affiliate or constituent that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member or supporter of, any organization that believes in or teaches the overthrow of the United States Government by force or by illegal or unconstitutional methods.

or setting aside in whole or in part the order of the Board . . . ." The Court of Appeals, 99 U. S. App. D. C. 104, 237 F. 2d 585, did not delete the provisions for Board certification but modified the order so that the company would be free to recognize District 50 not only when certified by the Board but, alternatively, when District 50 "shall have been freely chosen as such [representative] by a majority of the employees after all effects of unfair labor practices have been eliminated." 99 U. S. App. D. C., at 107, 237 F. 2d, at 588.

The Board's order also required the company to post for at least 60 days a notice prepared by the Board. In the notice the company would state to its employees that it would not discourage membership in, or interrogate the employees concerning their activities on behalf of, ". . . Teamsters . . . Local No. 612, or any other labor organization . . . ," and, further, that the company would ". . . withhold all recognition from District 50 . . . unless and until said organization shall have been certified as such representative by the . . . Board." 112 N. L. R. B. 387, 391. The parties raised no objection to the notice either before the Board or in the Court of Appeals. However, the Court of Appeals on its own motion struck from the notice the references to the Teamsters Local, stating its view that "references to that union in the Board's form of notice are susceptible of being construed as" indicating that the Board "prefers Teamsters." 99 U. S. App. D. C., at 108, 237 F. 2d, at 589. The court also added, to the paragraph in the notice stating that the company would withhold recognition from District 50 until the union received a Board certification, the alternative "or [until District 50] shall have been selected as such [representative] by a majority of our employees at a time at least 60 days later than the date of this notice." 99 U. S. App. D. C., at 109, 237 F. 2d, at 590.

Because important questions of the administration of the Act were raised, we granted certiorari on the Board's petition. 352 U. S. 999.

The Board's order was fashioned under § 10 (c), 29 U. S. C. § 160 (c), which vests remedial power in the Board to redress unfair labor practices by "an order requiring such person [committing the unfair labor practice] to cease and desist from such unfair labor practice, and to take such affirmative action . . . as will effectuate the policies of this Act . . . ." The Board's discretionary authority to fashion remedies to purge unfair labor practices necessarily has a broad reach. *Labor Board v. Link-Belt Co.,* 311 U. S. 584, 600. But the power is not limitless; it is contained by the requirement that the remedy shall be "appropriate," *Labor Board v. Bradford Dyeing Assn.,* 310 U. S. 318, and shall "be adapted to the situation which calls for redress," *Labor Board v. Mackay Radio & Telegraph Co.,* 304 U. S. 333, 348. The Board may not apply "a remedy it has worked out on the basis of its experience, without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act." *Labor Board v. Seven-Up Bottling Co.,* 344 U. S. 344, 349. The Board's provision for a Board certification must therefore be examined in the light of its appropriateness in the circumstances of this case.

In formulating remedies for unfair labor practices involving interference by employers with their employees' freedom of choice of a representative, the Board has always distinguished the remedy appropriate in the case of a union *dominated* by an employer from the remedy appropriate in the case of a union *assisted but undominated* by an employer. In the case of a *dominated* union the Board usually orders the complete disestablishment of the union so that it can never be certified by the Board: This Court has sustained such orders. *Labor Board v.*

*Pennsylvania Greyhound Lines, Inc.,* 303 U. S. 261; *Labor Board* v. *Newport News Shipbuilding & Dry Dock Co.,* 308 U. S. 241.   On the other hand, in the case of the *assisted but undominated* union, the Board has consistently directed the employer to withhold recognition from the assisted union until the union receives a Board certification.   The basis for the distinction is that, in the Board's judgment, the free choice by employees of an agent capable of acting as their true representative, in the case of a *dominated* union, is improbable under any circumstances, while the free choice of an *assisted but undominated* union, capable of acting as their true representative, is a reasonable possibility after the effects of the employer's unfair labor practices have been dissipated. See *Labor Board* v. *Wemyss,* 212 F. 2d 465, 471, 472.

The reason for the Board's certification requirement is to invoke the normal electoral processes by which a free choice of representatives is assured.   The Board's opinion in this case states that

". . . the Board has, since its earliest days, recognized that the policies of the Act could best be effectuated in cases involving violations of Section 8 (a)(2) by directing the offending employers to withhold the preferred treatment afforded to the labor organizations involved until the effect of the unfair labor practices had been dissipated and the majority status of such unions had been established in an atmosphere free of restraint and coercion." 113 N. L. R. B. 786, 787.

Again,

". . . in the case of an assisted but undominated labor organization, the Board has required the offending employer to withdraw and withhold recognition from the assisted union until it was certified, thus enabling the Board to assure the affected

employees that their statutory right to freely choose a bargaining representative shall be preserved by conducting an election under conditions which will render such a choice possible." 113 N. L. R. B. 786, 788.

It is thus clear that the most significant element of the remedy is not the formality of certification but an election, after a lapse of time and under proper safeguards, by which employees in "the privacy and independence of the voting booth," *Brooks* v. *Labor Board,* 348 U. S. 96, 99–100, may freely register their choice whether or not they desire to be represented by the assisted union.

In this case of a noncomplying union, however, requiring the formality of Board certification in addition to an election has the same effect as disestablishment. This is because District 50 can never be certified by the Board so long as the United Mine Workers remain out of compliance with § 9 (f), (g), and (h). But disestablishment has been applied by the Board and upheld by the courts only in the case of a dominated union, where a free choice of a truly representative union is improbable under any circumstances, and therefore where an abridgment of the statutory right of employees does not result. District 50 was found by the Board to be an assisted but not a dominated union, so that a free choice of District 50 by Bowman's employees is a reasonable possibility. Therefore the certification requirement here misapplies the Board's own policy by actually defeating the statutory rights of Bowman's employees.

The Board reasoned that since this Court has sustained its power under § 10 (c) "to dissipate the effect of an unfair labor practice by *completely removing* a dominated union . . . , the Board manifestly has the statutory power to impose the lesser sanction of certification in the case of an assisted union . . . ." 113 N. L. R. B. 786, 788. Even if we grant the premise that the Board may

remove a dominated union, it does not follow that the Board may remove this merely assisted union. Certification under the circumstances of this case is not the "lesser sanction" but is substantially the same as removal. Unlike an assisted union, a dominated union is deemed inherently incapable of ever fairly representing its members. *Labor Board* v. *Pennsylvania Greyhound Lines, Inc., supra,* at 270, 271; *Labor Board* v. *Newport News Shipbuilding & Dry Dock Co., supra,* at 250.

We do not think, however, that the Board lacks authority to effect a remedy in this case which would properly reconcile the objectives of eliminating improper employer interference and preserving the employees' full choice of a bargaining representative. The prohibitions of § 9 (f) and (h) against investigation of representatives, the requirement of § 9 (c) of Board-conducted elections connected with such investigations, and the prohibition of § 9 (g) against certification of a noncomplying union, are concerned not with remedial orders under § 10 (c) but with questions of representation and unfair labor practices "raised by a labor organization." The single objective of § 9 (f), (g), and (h) was "to stop the use of the Labor Board" by noncomplying unions. *Labor Board* v. *Dant,* 344 U. S. 375, 385. These subsections contain nothing compelling the Board to insist upon a Board certification and thus to deny the employees the right at an election held under proper safeguards to select the noncomplying assisted union for their representative. Nothing in the subsections, for example, is a barrier to the conduct by the Board of an election not followed by a certification, or to the making of an arrangement with another appropriate agency, state or federal, for the conduct of the election under conditions prescribed by the Board. Clearly an election under such circumstances will also achieve the Board's prime objective in these cases, *viz.,* to "demonstrate that . . . [the assisted union's] right to

be the exclusive representative of the employees involved has been established in an atmosphere free of restraint and coercion." 113 N. L. R. B. 786, 788. Indeed, in its brief, the Board impliedly admits the irrelevance of the formality of certification to the effectiveness of the fashioned remedy, stating that ". . . if that view [of certification] is rejected, the Board may perhaps devise other measures which will enable it to make certain that the employees' choice of bargaining representative is in fact made in an atmosphere free of restraint and coercion . . . ." In a footnote the Board suggests such an alternative: ". . . [T]he Board might conduct an election among the employees and certify the union if it wins the election provided it is in compliance but otherwise certify only the arithmetical results. . . ."

The Board's opinion also states that to dispense with a certification in the case of a noncomplying assisted union, while requiring a certification in the case of a complying union, "would negative the policy and intent of Section 9 (f), (g), and (h) of the Act." 113 N. L. R. B. 786, 790. But this misinterprets the scope of those provisions. "Subsections (f), (g) and (h) of § 9 merely describe advantages that may be gained by compliance with their conditions. The very specificity of the advantages to be gained and the express provision for the loss of these advantages imply that no consequences other than those so listed shall result from noncompliance." *United Mine Workers* v. *Arkansas Oak Flooring Co.,* 351 U. S. 62, 73. Congress did not in § 9 (f), (g), and (h) make the filing required by those subsections compulsory or a condition precedent to the right of a noncomplying union to be recognized as the exclusive representative of the employees. *United Mine Workers* v. *Arkansas Oak Flooring Co., supra.* Similarly, the Board cannot, through the requirement of a Board certification, make noncompliance a reason for denying the employees the right to choose the

assisted union at an election which can readily serve its designed purpose without such certification. Finally, we do not believe that the issuance of an order in the case of a noncomplying assisted union different from the form of order consistently used in cases of complying assisted unions extends "preferred treatment" to the noncomplying union. What it does in fact is to give the noncomplying union substantially the same treatment as a complying union instead of subjecting it to disabilities not intended by Congress as a result of noncompliance. The Board's order is therefore not appropriate or adapted to the situation calling for redress and constitutes an abuse of the Board's discretionary power.

However, the modifications of the cease-and-desist order made by the Court of Appeals go beyond permissible limits of judicial review under § 10 (f) and cannot be sustained. The Court's alternative to Board certification dispenses with the necessity of an election and can be interpreted, as the Board argues, to leave to the offending employer and the assisted union the decision when the effect of the unfair labor practice has been eliminated and the employees have regained their freedom of action. Nothing said in the *Arkansas Flooring* case, upon which the Court of Appeals relied, justifies the Court of Appeals in going so far as to dispense with an election under proper safeguards. This Court has long recognized the propriety of an agency's choice of an election as the proper means to assure dissipation of the unwholesome effects of the employer's unlawful assistance to a union. See *Texas & New Orleans R. Co.* v. *Brotherhood of Railway Clerks,* 281 U. S. 548. The Board's discretion here was exceeded only in the inflexibility of the requirement for a Board certification notwithstanding its inappropriateness in the circumstances of this case.

The rewriting of the notice to be posted was improper insofar as it deleted reference to the Teamsters Union,

because no objection to the notice in this respect was ever raised by the parties before the Board. *Labor Board* v. *Seven-Up Bottling Co.,* 344 U. S. 344, 350; *Labor Board* v. *Cheney California Lumber Co.,* 327 U. S. 385, 388–389; cf. *Federal Power Comm'n* v. *Colorado Interstate Gas Co.,* 348 U. S. 492, 497. Section 10 (e) of the Act provides: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the . . . [Court of Appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." No extraordinary circumstances were shown here.

The orderly administration of the Act and due regard for the respective functions of the Board and reviewing courts require that we vacate the judgment of the Court of Appeals with instructions to remand the case to the Board for further proceedings consistent with this opinion.

*It is so ordered.*