NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RUBATEX CORPORATION, Respondent.

No. 78–1341.

United States Court of Appeals,
Fourth Circuit.

Argued March 16, 1979.

Decided June 29, 1979.

148

Barbara Gehring, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, N. L. R. B., Washington, D. C., on brief), for petitioner.

Warren M. Davison, Washington, D. C., and Carrol Hament, Baltimore, Md. (Earle K. Shawe, Eric Hemmendinger, Shawe & Rosenthal, Baltimore, Md., on brief), for respondent.

Before WINTER and HALL, Circuit Judges, and HARVEY,* District Judge.

* Alexander Harvey, II, United States District Judge for the District of Maryland, sitting by designation.

WINTER, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order finding Rubatex Corporation in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act and prescribing certain injunctive and monetary relief. Having concluded that substantial evidence in the record as a whole supports the conclusion that unfair labor practices were committed and that the remedy imposed was not an abuse of discretion, we grant enforcement of the Board's order.

## I.

The essential facts have been stipulated. Rubatex, a Virginia corporation, is engaged in the manufacture of rubber products at its Bedford, Virginia, facility. At all times material to this litigation, the company has recognized the United Rubber, Cork, Linoleum and Plastic Workers of America, Local 240, AFL–CIO, as the collective bargaining representative of all of its production and maintenance employees. The collective bargaining agreement between the company and the union expired August 31, 1976. Since negotiations for a new contract had reached an impasse, a strike began the following day. On this date, there were approximately 830 employees in the bargaining unit.

Rubatex was able to continue its operations throughout the strike with the aid of supervisory personnel, non-union employees, and thirteen union members who chose to work. The strike ended on October 25, 1976, when a new agreement was executed. A month later, without notice to the union, the company paid a bonus to all employees who worked during the strike, including the thirteen union members. Of the thirteen, nine who worked throughout the strike received $100 each, and four who worked proportionately less time received $25 each.[1] No payments were made to the 817 union employees who participated in the strike. At a subsequent meeting between the company and the union, the union requested certain information about the payments and

questioned their legality. Although the company representative said that he would check into the payments, no response was forthcoming.

Based on these facts, the Board concluded that the company's payments to the non-striking union members interfered with the employees' right to strike in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The Board also found that Rubatex violated § 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), by making the payments without prior negotiation with the union and by failing to furnish the union with the information it requested. As a remedy for the 8(a)(1) violation, the Board ordered the company to pay $100 to each of the union employees who engaged in the strike and $75 to each of the union members who received only $25 for their work during the strike, plus interest. Rubatex was required, in addition, to cease and desist from the unfair labor practices found, to post a notice to that effect at its Bedford plant, and to notify the Regional Director of the steps it had taken to comply with the Board's order.

## II.

■ We deal first with the violations found by the Board. Section 8(a)(1) of the National Labor Relations Act declares it an unfair labor practice for an employer to interfere with rights guaranteed in § 7 of the Act, and § 7 guarantees employees the right, generally, to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Not only is a strike one such concerted activity, but it has also been accorded special deference in the enactment of federal labor laws. *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 233–235, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). Accordingly, the Supreme Court has held that the award of additional seniority to striker replacements and non-strikers interfered with an employee's right to strike in violation of § 8(a)(1). *Id.* at 235–36, 83 S.Ct. 1139.

1. Two-hundred and forty of the non-union or supervisory employees who worked during the strike received $100 each, three received $50 each, and one was paid $75.

In *Aero-Motive Manufacturing Co.*, 195 NLRB 790 (1972), enf'd, 475 F.2d 27 (6 Cir. 1973), the Board applied the rationale of *Erie Resistor* to post-strike payments to non-striking union employees. In the Board's view, by distinguishing "solely on the basis of who engaged in protected, concerted activity and who did not," such payments "not only created a divisive wedge in the work force, but also clearly demonstrated for the future the special rewards which lie in store for employees who choose to refrain from protected strike activity." *Id.* at 792. As a result, the Board concluded that the payments tended to inhibit the free exercise of the employees' right to strike contrary to § 8(a)(1).

■ We agree with the Board's determination in *Aero-Motive* and in the instant case that the grant of special benefits to union members who have chosen not to strike unlawfully interferes with the right of those and other employees to strike in the future. In so holding, we are unpersuaded by Rubatex's argument that any adverse impact which the post-strike payments might have on future union activity is purely speculative and insubstantial. The sum of $100 is not such a small amount that company employees will not think twice about participating in a future strike. Similarly, that only thirteen of the company's 830 union employees were rewarded is irrelevant in view of the fact that every employee who decided not to strike received a bonus. Nor are the company's employees likely to forget the special treatment accorded non-strikers in the three-year period before the new collective bargaining agreement is due to expire. Finally, no evidence has been presented that the union has imposed internal sanctions upon the thirteen members who did not participate in the strike.

■ Rubatex contends that the preservation of its reputation for fairness and the continuation of its operations constituted substantial business justifications for the payments. To the contrary, because they were not announced until after the strike, the payments were clearly not designed to satisfy any antecedent promises to the non-striking employees or to obtain sufficient workmen to operate the Bedford plant. Moreover, any such business justifications, if legitimate, would be insufficient to outweigh the employees' interest in uninhibited strike activity. *See Erie Resistor*, 373 U.S. at 236–37, 83 S.Ct. 1139; *Aero-Motive*, 195 NLRB at 792.

### III.

Under § 8(a)(5) of the NLRA, an employer commits an unfair labor practice by refusing to bargain collectively with the representative of his employees. Collective bargaining is defined in § 8(d) of the Act as the duty to confer in good faith with respect to wages, hours, and other terms and conditions of employment. Here it is undisputed that Rubatex failed to bargain with the union about the bonus prior to its implementation.

■ To avoid the sanction of § 8(a)(5), Rubatex advances two arguments, but we are persuaded by neither. First, the company contends that an employer has no duty to bargain over gifts that are unrelated to employee services. But the letter accompanying the payment of the bonuses indicated that they were given "for the employees' effort in keeping the plant in operation during the course of the strike." In addition, the union employees who worked throughout the entire strike received $100, whereas those who worked proportionately less time received $25. Rubatex argues, second, that it would be futile to require an employer to bargain over payments which the union would not accept. Yet, as noted in *Aero-Motive*, 195 NLRB at 792, notice to the union would at least have brought the illegality of the company's action to light and perhaps have motivated Rubatex to seek alternatives in an effort to avoid litigation.

■ An employer also violates § 8(a)(5) by failing to provide information that is needed by the bargaining representative for the proper performance of its duties. *NLRB v. Acme Industrial Corp.*, 385 U.S.

432, 435–36, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *Aero-Motive, supra* at 792. During the regular meeting following the payments, the union representative asked how the bonus was computed and the company's agent responded that this was not a union matter. When the union suggested that some of its members received payments, the company said it would check. The discussion ended with the union's observation that, for purposes of company bonuses, strikers should not be differentiated. Although other subjects were discussed at the meeting, we think that this exchange gave Rubatex sufficient notice that the union desired information concerning the bonus. Nor was the union obligated to repeat its request. *See Aero-Motive, supra* at 792. Consequently, when the company failed to produce the requested information, it engaged in a separate violation of § 8(a)(5).

### IV.

■ The propriety of the remedy adopted by the Board presents greater difficulty. The objective is to restore the statutorily required equality of treatment as between those employees who engaged in concerted activities and those who did not, and not simply to punish an offending employer. In the formulation of a remedial order, the Board has broad discretion, and only where its effect is patently an attempt to accomplish an end other than that within the policy of the Act will the order be set aside. *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 346–47, 73 S.Ct. 287, 97 L.Ed. 377 (1953); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194–95, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

For its violation of § 8(a)(1), Rubatex was ordered to pay $100 to each striker and $75 to each of the non-strikers who had received only $25, plus interest. A similar remedy was imposed in *Aero-Motive*, where the Board required the offending employer to pay $100 to the strikers who had not been given the $100 bonus paid to non-strikers. 195 NLRB at 793. The Board's order in *Aero-Motive* was enforced by the Sixth Circuit, which noted that the Board had broad discretion in formulating remedies and that there appeared to be no practical alternative to the relief prescribed. 475 F.2d at 28.

As we see it, the company's conduct in the instant case gave rise to three possible remedies: a cease and desist order alone, rescission of the bonus, and payment of the bonus to those who did not receive it. A cease and desist order, even if posted, might well be ineffective in dispelling the apprehensions of those employees who are aware that non-strikers were treated more favorably in the past and know of no restriction on the company's ability to engage in the same behavior in the future. Rescission, on the other hand, may be impractical at this late date and may create greater discord among the employees than currently exists as a result of the company's unlawful action. Payment of an equivalent bonus to the striking employees would seem to be the most effective and least disruptive of the alternatives, as far as the employees are concerned. However, it requires Rubatex to pay the substantial sum of $82,000 ($100 to each of the 817 union employees who participated in the strike and $75 to each of the four union members who were given only $25), plus interest.

■ Since no one of these three remedies is completely satisfactory, we are unable to hold that the Board abused its discretion in adopting the third alternative. It is true that the sum required to be paid is not inconsequential; yet, the record does not reflect whether payment of the sum would have a substantial adverse effect on the company.[2] Absent such evidence, we cannot say that the payment prescribed by the Board was excessive.

*ENFORCEMENT GRANTED.*

---

2. Since there were 830 employees in the bargaining unit, the sum of $82,000, plus interest, is probably equivalent to the payroll for the unit for only several days. The bonus voluntarily paid by Rubatex to non-union or supervisory employees who worked during the strike amounted to $24,225. By these measures, the sum of $82,000 does not seem unduly burdensome.

ALEXANDER HARVEY, II, District Judge, concurring in part and dissenting in part:

I would agree with the majority that the acts in question of representatives of Rubatex Corporation amount to a violation of §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act. While I would also agree that the injunctive relief ordered by the Board was appropriate under the circumstances here, I would not grant enforcement of that part of the Board's order requiring Rubatex to pay the substantial sum of $82,000 to 821 union employees because of the payment of merely $1,000 to thirteen union members who worked during the strike.

Undoubtedly, the Board has broad discretionary authority to fashion an appropriate remedy to purge unfair labor practices. However, the Supreme Court has recognized that the Board's power is not limitless, that the particular remedy must be appropriate under the situation which calls for redress, and that the remedy may not be oppressive or punitive as applied to the particular circumstances of a case. *NLRB v. District 50, UMW,* 355 U.S. 453, 458, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958); *Carpenters' Local 60 v. NLRB,* 365 U.S. 651, 655, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961). The majority has cited decisions of the Supreme Court indicating that an order of the Board will be set aside only where its effect is patently an attempt to accomplish an end other than that within the policy of the Act. *E.g., Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). This standard of review was first articulated in *Virginia Electric Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943). Nevertheless, since *Virginia Electric Co.,* the Supreme Court has not hesitated to set aside an order of the Board which it found to be punitive rather than remedial. *NLRB v. District 50, UMW, supra; Carpenters' Local 60 v. NLRB, supra.*

The strike in this case began on September 1, 1976 and ended on October 25, 1976, when a new collective bargaining agreement was executed. Rubatex was able to continue to operate during the strike, and thirteen members of the union chose to work along with certain non-union employees and supervisory personnel. When the company a month later decided to pay a bonus to employees who had worked during the strike, it determined that the thirteen union members who chose to work should also receive the bonus along with non-union employees.

The illegality here arose as a result of the bonus payments to the union members, nine of whom received $100 each and four of whom received $25 each. Because of the payment of merely $1,000 to thirteen members of the union, the Board, besides entering a cease and desist order, has required that the company pay $100 to each of the 817 union employees who engaged in the strike and $75 to each of the four union members who had received only $25 for their work during the strike, plus interest. The company has therefore been ordered to pay the substantial sum of $82,000, plus interest. In my opinion, this part of the remedy is oppressive under the circumstances of this case and amounts to the imposition of a punitive fine.

I would agree with the majority that rescission of the bonus is not a practical remedy at this late date, but I do not agree that the payment of an equivalent bonus is a proper alternative. In my opinion, the appropriate remedy here would have been the entry of the injunctive relief alone. That portion of the Board's order requires the company to cease and desist from the unfair labor practices in question, to post a notice to that effect at its plant in Bedford, Virginia, and to notify the Regional Director of the steps it had taken to comply with the Board's order. Such a remedy would have adequately inhibited any future unfair labor practice of the type involved here. It would have been quite apparent to employees from the notice posted that if Rubatex at any time in the future paid members of the union a bonus for working during a future strike, the company could be cited for contempt and then a punitive fine could be imposed.

As the majority opinion notes, a similar remedy was imposed by the Board in *Aero-Motive Manufacturing Co.,* 195 NLRB 790 (1972), *enforced,* 475 F.2d 27 (6th Cir. 1973). However, different circumstances were involved there, and the impact of the monetary portion of the Board's order was much less onerous. In *Aero-Motive,* the employer had paid $4,000 to non-strikers and was required by the Board to pay $7,200 to the strikers. Even so, two members of the Sixth Circuit panel in that case voted to enforce the monetary portion of the order "reluctantly" (475 F.2d at 28), while Chief Judge Phillips dissented in part and voted to deny enforcement of that portion of the Board's order which would require payments to the strikers.

I do not find it significant that Rubatex did not produce evidence before the Board indicating that the payment of $82,000 would have a substantial adverse effect on company earnings. $82,000 is concededly a substantial sum, particularly when considered in relation to the $1,000 paid here as bonuses to the non-striking members of the union. Whether Rubatex is a large or a small company and whether or not it operates profitably, the Board's order requiring the payment of this large sum is in my opinion punitive under the circumstances of this case.

At some point, an order of the Board requiring a violator of the Act to pay substantial sums becomes oppressive and punitive in nature. The Board is simply not free to set up any system of penalties which it deems adequate to deter prospective violators of the Act. *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940). In balancing all the factors, I believe that the line has been crossed here and that the entry of the cease and desist order alone would be sufficient to correct the illegality under the particular circumstances of this case.

For these reasons, I would deny enforcement of that portion of the Board's order which requires the company to pay $82,000, plus interest, to members of the union.