**BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, LODGE 365, AFL–CIO–CLC, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**AMCAR DIVISION, ACF INDUSTRIES, INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 79–1843, 79–1857.

United States Court of Appeals, Eighth Circuit.

Submitted May 23, 1980.

Decided June 16, 1980.

Louis N. Laderman, St. Louis, Mo., for petitioner, (Amcar); Gerald Tockman, St. Louis, Mo., on brief.

Carol DeDeo, Atty., N. L. R. B., Washington, D. C., for respondent; Peter Winkler and Vivian A. Miller, Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

Before HEANEY, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

Brotherhood of Railway Carmen of the United States and Canada, Lodge 365 (union) and Amcar Division, ACF Industries, Incorporated (company) petition for review of a decision and order of the National Labor Relations Board (NLRB). The NLRB has filed a cross-application for enforcement of the decision and order.

During 1978 an audit disclosed that the local union was delinquent in the payment of approximately $51,000 of per capita tax to the Grand Lodge (the international union). Upon advice of the General President of the Grand Lodge the local union's executive committee voted to levy a one time $40 assessment to be paid by the union members at the rate of $10 a month. The members were advised of the assessment by letter and the union also advised the company of the assessment. The collective bargaining agreement in effect at the time contained a standard union-security clause and a checkoff provision for dues, fees and assessments. Checkoff authorization cards had been executed by all members and the company deducted the assessment from members' wages based on the cards. However, the checkoff authorization cards, which had been in use since 1951 allowed the deduction of "initiation fee and monthly

dues" but contained no reference to assessments.

Two union members from the bargaining unit which contained 1200–1300 members filed complaints with the NLRB. The Administrative Law Judge (ALJ) found that the union and company had violated sections 8(a)(1) and 8(b)(1)(A) of the NLRA by deducting the assessment based on checkoff authorization cards which did not embrace assessments. The ALJ recommended that a cease and desist order be issued and that the union and company jointly and severally reimburse the employees with interest. The NLRB affirmed the findings of the ALJ and adopted the recommended order.

At the outset we note, as did the ALJ, that the only coercion involved in this case is the checkoff itself. The record does not contain any evidence that the local union's debt was invalid or that union or company officials did not act in good faith.[1] The propriety of the method used for authorizing the assessment is not at issue, however, the union's procedure must comply with 29 U.S.C. § 411 of the Labor-Management Reporting and Disclosure Act of 1959.

We agree with the Board that the checkoff authorization cards in this case did not provide approval for deduction of the assessment. *See NLRB v. Atlanta Printing Specialties*, 523 F.2d 783, 787 (5th Cir. 1975); *NLRB v. Brotherhood of Railway, Airline and Steamship Clerks*, 498 F.2d 1105, 1109 (5th Cir. 1974). Therefore, the union and company have technically violated sections 8(a)(1) and 8(b)(1)(A) of the NLRA.

Both the union and company argue that the Board's remedy, ordering reimbursement of the assessment, is improper and punitive. The Supreme Court has made the following observations about the Board's remedial powers:

The Board's discretionary authority to fashion remedies to purge unfair labor practices necessarily has a broad reach. *Labor Board v. Link-Belt Co.*, 311 U.S. 584, 600 [61 S.Ct. 358, 366, 85 L.Ed. 368].

But the power is not limitless; it is contained by the requirement that the remedy shall be "appropriate," *Labor Board v. Bradford Dyeing Assn.*, 310 U.S. 318 [60 S.Ct. 918, 84 L.Ed. 1226], and shall "be adapted to the situation which calls for redress," *Labor Board v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 348 [58 S.Ct. 904, 912, 82 L.Ed. 1381]. The Board may not apply "a remedy it has worked out on the basis of its experience, without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act." *Labor Board v. Seven-Up Bottling Co.*, 344 U.S. 344, 349 [73 S.Ct. 287, 290, 97 L.Ed. 377].

*NLRB v. Mine Workers*, 355 U.S. 453, 458, 78 S.Ct. 386, 389, 2 L.Ed.2d 401 (1958).

It is apparent that in the present case a reimbursement order is not "appropriate" and in view of the technical nature of the violation such an order would be punitive. The Board's order would require the union and company to undertake location and reimbursement of the 1200–1300 employees who worked for the company in 1978. The union could then seek authorization of an additional assessment from current employees or bring legal action against former employees. The ALJ recognized this possibility and specifically indicated that nothing in her decision prevented "the Union from seeking to establish, in another forum, that the assessment was properly imposed and legally due."

The order of the Board should be modified in the following manner: (1) Current employees entitled to reimbursement—Notices should be posted for 30 days which indicate that an eligible employee may make written application for reimbursement of the $40 assessment without interest within 30 days from the day the notice is dated and posted. Such notice may also indicate that if reimbursement is claimed, the union may request the approval of another assessment under its constitution for

---

1. Three prior assessments had been levied by the union since 1951. These assessments were collected by checkoff based on the same authorization card and no employee complaints or grievances were filed.

the purpose of recouping the amount refunded. (2) Former employees entitled to reimbursement—Notice should be sent by registered mail to the last known address of each eligible former employee. The notice should indicate that the written application for reimbursement of the $40 assessment without interest may be made within 60 days from the date the notice was mailed. Such notice may also indicate that if reimbursement is claimed, the union may institute legal action to establish the former employee's legal liability to the union for the amount reimbursed.

■ The company argues that it should not be held jointly and severally liable for the reimbursement and at most should be considered only secondarily liable. However, the Board has the option of imposing joint and several liability where both union and company violate the NLRA. *See NLRB v. Campbell Soup Co.*, 378 F.2d 259, 262, *cert. denied*, 389 U.S. 900, 88 S.Ct. 218, 19 L.Ed.2d 217 (1967). Furthermore, the collective bargaining agreement contains an indemnification clause which will effectively shift the entire reimbursement obligation to the union.

The enforcement of the order of the Board will be granted with the modifications indicated herein.