**FARMERS ENERGY CORPORATION,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 83–2000.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1984.

Decided March 28, 1984.

John O. Harris, Harris, Dowell, Fisher, McCarthy & Kaemmerer, Chesterfield, Mo., for petitioner.

Ann Jones, Elliott Moore, N.L.R.B., Washington, D.C., for respondent.

Before BAUER, WOOD and ESCH-BACH, Circuit Judges.

BAUER, Circuit Judge.

The employer-petitioner, Farmers Energy Corporation (Farmers Energy or the Company), requests review of a National Labor Relations Board decision that it violated Section 8(a)(1), (2), and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1)–(3) (1974). The case against Farmers Energy arose when Mary Blackard, a Company employee, charged that the Company interfered with her choice of a union. A regional director for the Board consolidated Blackard's case with another against the Company and issued a complaint. The administrative law judge ruled against Farmers Energy. Both the General Counsel and Farmers Energy excepted to the judge's rulings. The Board adopted the General Counsel's arguments and ordered Farmers Energy to cease recognizing the union it had assisted. Farmers Energy now argues that the Board incorrectly considered events occurring after the union was recognized when the Board ruled that Farmers Energy unlawfully recognized the union. Farmers Energy further argues that the evidence does not support either the Board's findings or the remedy it imposed. We believe that the Board ruled correctly, and thus grant enforcement of its order.

## I

### A. Recognition of the CIU

The administrative law judge found the following facts.[1] Farmers Energy, an Illinois corporation employing approximately forty persons, manufactures dog food. In October 1980, it began remodeling its facilities so it also could produce ethyl alcohol. The Teamsters Union picketed the plant for about one week during the conversion effort. Several months later, Farmers Energy's operations manager, Herb Vendig, announced at a meeting of all employees that the Teamster's Union picket line had been to protest use of non-union construction workers, and not to organize Farmers Energy employees.

Soon thereafter, in April 1981, Vendig met with Ed Brechner, his assistant superintendent, to discuss plans to install a union at the Company. Vendig told Brechner that Vendig could set up the Congress of Independent Unions, Solar Energy Workers, Local 1 (the CIU or the Union) in any manner he wished. Vendig also stated that he wanted Brechner to represent the CIU.

Vendig met again with Brechner on April 9. He told Brechner that the CIU wanted a different representative because Brechner was a Company supervisor. Vendig said that Roy Rogers, one of the Company's carpenters, would lead the CIU organizing campaign. Vendig then told Bre-

---

[1] The administrative law judge made several determinations of witness credibility in formulating his findings of fact. Farmers Energy challenged some of those determinations before the Board. The Board rejected Farmers Energy's challenges, ruling that no evidence supported reversal of the administrative law judge's credibility rulings. The Company has not renewed its challenges before us.

chner to announce a noontime employees' meeting for that day.

The meeting started immediately after the employees' lunch break. Neither Vendig nor Brechner attended. Rogers was introduced at the meeting as the CIU employee representative. Rogers announced that he had arranged a meeting that night with a CIU representative at a motel. When some employees balked at traveling to a motel for the meeting, Rogers agreed to set up the meeting at the plant if possible.

That evening after work, the employees met with CIU National President Truman Davis who stated that the CIU could win for them a fifty-cent raise from Farmers Energy. Several days later, the employees met again with Davis and, between April 12 and April 23, a majority of them signed CIU membership applications. Additionally, the employees formed a negotiating committee composed of one employee from each department of the Company's operations.

Davis soon called Vendig to demand Company recognition of the CIU. Vendig referred Davis to the Company's labor lawyer, John Harris; together they agreed to submit the authorization cards to a neutral third party for verification. After verification, Farmers Energy recognized the CIU and began collective bargaining on April 23.

The administrative law judge viewed Vendig's initial introduction of Rogers to the CIU as an unlawful interference in the rights of employees to choose their own representatives under Section 8(a)(1) and (2). The judge ruled, however, that the General Counsel failed to prove that an uncoerced majority of employees had not selected the CIU, and that Farmers Energy did not dominate the CIU. The judge focused on pre-recognition events to make his ruling; he thus did not recommend that the CIU be disestablished.

### B. Collective Bargaining

Farmers Energy and the CIU conducted three collective bargaining sessions between April 23 and May 13. Harris and Davis were chief spokesmen for Farmers Energy and the CIU.

During the negotiations, Vendig was involved in the following episode which the General Counsel challenged and the administrative law judge found illegal. One member of the employee negotiating committee, Rurie Shields, inadvertently missed a bargaining session. The day after the session, Vendig met with Shields, an electrician, and two of his co-workers. All three electricians are black. Vendig expressed surprise that no blacks or electricians attended the bargaining session. Vendig told the three to decide who among them would attend future sessions. The three decided on Shields. Vendig then told Shields to attend all future meetings. The administrative law judge ruled that Vendig's interference with the make-up of the negotiating committee violated Section 8(a)(1) and (2).

Farmers Energy and the CIU reached agreement on May 13. The CIU set up a ratification vote for May 14. Brechner testified that Vendig told him to press employees to ratify the agreement and to use threats of layoffs to ensure approval. Several employees confirmed that Vendig's subordinates threatened them. The contract was ratified the evening of May 14. The administrative law judge ruled that each incident of threats violated Section 8(a)(1) and (2).

The administrative law judge recommended to the Board that Farmers Energy be ordered to cease giving effect to the collective bargaining agreement. The judge also recommended back pay awards to all employees who paid CIU dues under the union shop provisions of the agreement.

### C. Board Decision

The Board adopted all but one of the administrative law judge's recommendations. The Board determined that Farmers Energy's pre-recognition conduct, in the light of its post-recognition conduct, tainted the majority status of the CIU and, consequently, rendered recognition of the CIU

unlawful. Accordingly, in addition to the remedies recommended by the administrative law judge, the Board ordered Farmers Energy to cease recognizing the CIU unless and until the CIU was certified by the Board.

## II

Farmers Energy first challenges the Board's ruling with two related arguments. It argues that the Board improperly considered post-recognition conduct to determine that the CIU's majority status was tainted and that the evidence is insufficient to support the Board's conclusions. Second, Farmers Energy argues that the Board applied improper remedies.

### A. Application of Post-recognition Conduct

■ The Board used a totality of circumstances test to assess the impact of Farmers Energy's assistance to the CIU. According to the Board, that test includes an analysis of post-recognition conduct as well as pre-recognition conduct. Farmers Energy contends that the Board should have reviewed none of the events occurring after the Company formally recognized the CIU when considering whether the CIU's majority status was tainted. According to Farmers Energy, evidence of post-recognition conduct is not relevant to whether the employees freely signed authorization cards. Petitioner's br. at 11.

Farmers Energy relies on this court's statement in *Lake City Foundry Co. v. NLRB*, 432 F.2d 1162, 1173 (7th Cir.1970), that post-election conduct by the company in that case could not have adversely affected the employees' freedom to choose a union. The court there ruled that the record considered as a whole did not substantially support the Board's findings. The court discovered only minor and isolated company conduct, which could not have tainted the election.

*Lake City Foundry* is distinguishable on the facts from this case. That panel, contrary to the Board's determination, found no pre-election incidents constituting interference. On the other hand, the Board in this case noted several incidents of pre-recognition interference. Moreover, this case does not involve an election at all, but rather claims that Farmers Energy, through a course of conduct, unlawfully assisted establishment of the CIU. Significantly, the *Lake City Foundry* court stated only that unfair labor practices occurring after the election could not directly affect the election. That decision does not preclude use of post-election activity as an aid when interpreting pre-election events.

Farmers Energy similarly mischaracterizes the Board's ruling in this case. The Board did not conclude that post-recognition conduct "coerced employees into signing" authorization cards. Petitioner's br. at 11–12. The Board specifically noted that Farmers Energy conceived the idea of organizing Company employees, selected the employee to campaign for CIU, offered its facilities for organizational meetings, and directed supervisors to ensure employee attendance at those meetings. The Board ruled that these Company actions taken before the CIU was authorized to represent the employees tainted the Union's majority status. The Board also noted that Farmers Energy continued its course of unlawful interference and coercion by aiding the selection of employees' bargaining representatives and threatening employees to gain approval of the collective bargaining agreement. The Company's actions after it recognized the Union indicated to the Board that the Company's pre-recognition conduct was designed to aid it in asserting control over the employees' bargaining representative. The Board thus did not "rest" its decision on post-recognition conduct, as Farmers Energy claims. Rather, the Board reviewed the earlier conduct in the light of the later conduct. It is proper and appropriate to use evidence of post-recognition conduct to analyze and draw conclusions from pre-recognition conduct.

### B. Sufficiency of the Evidence

Farmers Energy argues that the determination of whether the CIU's majority status is tainted rests on whether the Company's conduct affected the employees' de-

cisions to sign union authorization cards. It claims that no evidence supports such a finding. This argument fails because substantial evidence reveals that Farmers Energy interfered with the employees' right to freely choose a bargaining representative.

The Board ruled that Farmers Energy's conduct "intruded on its employees' statutory right" to choose a union and "unlawfully assisted" the CIU.[2] Proof of assistance to the CIU and interference with the employees' right of free choice does not depend on a direct showing that the employees were coerced into signing authorization cards. Other evidence may indicate that the employees did not have the complete freedom of choice contemplated by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1947).

■ Substantial evidence supports the Board's findings. The evidence reveals that Farmers Energy conceived the idea of bringing the CIU to the Company, selected the employee to represent the Union, and aided the Union's organizational efforts. Section 8(a) was designed to protect against this type of interference, evidence of which strongly suggests that the employees did not freely control their choice of a bargaining representative. *See generally Pacific Southwest Airlines v. NLRB,* 587 F.2d 1032 (9th Cir.1978) (The National Labor Relations Act favors employees' freedom of choice.). The Company's role in influencing the membership of the employees' negotiating committee and evidence that the Company threatened reprisals if the bargaining agreement was not ratified lend further weight to the conclusion that

Farmers Energy's early actions constituted interference.

### C. Remedy

■ Farmers Energy argues that the Board should not have ordered it to reimburse dues to employees paid to the CIU under the collective bargaining agreement, even accepting that the Company must stop recognizing the Union, because there was no finding that the employees were directly coerced into signing authorization cards. The Company contends that the lack of evidence of a "causal relationship between the Employer's alleged unfair labor practice of assisting the CIU and the employees' payment of dues" renders the Board order punitive and therefore inappropriate. We disagree.

■ The Board has broad discretion to order remedial acts to dispel the consequences of violations of the Act. *See, e.g., Local 60, United Brotherhood of Carpenters v. NLRB,* 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961). However the Company's pre-recognition conduct is characterized, the result of the conduct was installation of a union that in the Board's view may not have represented a majority of employees. The taint was significant enough to require the Board to order Farmers Energy to cease recognizing ·the CIU. We have agreed with the Board's conclusions. Farmers Energy's interference assured recognition of the CIU and passage of a collective bargaining agreement. As a consequence, the employees paid dues to the CIU. The Board's order that Farmers Energy pay back those dues was within its discretion to fashion a remedy for unfair labor practices.[3]

---

**2.** The Board did not rule that Farmers Energy so dominated the CIU as to require its disestablishment. The United States Supreme Court has recognized the difference between these rulings, stating:

> The basis for the distinction is that, in the Board's judgment, the free choice by employees of an agent capable of acting as their true representative, in the case of a *dominated* union, is improbable under any circumstances, while the free choice of an *assisted but undominated* union, capable of acting as their true representative, is a reasonable possibility

after the effects of the employer's unfair labor practices have been dissipated.

*NLRB v. District 50, United Mine Workers,* 355 U.S. 453, 459, 78 S.Ct. 386, 390, 2 L.Ed.2d 401 (1958) (emphasis in original).

**3.** The facts of this case do not differ significantly from the operative facts in *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943), when the Supreme Court upheld a Board order requiring reimbursement of checked-off dues to a union the employer had assisted.

### D. Conclusion

Substantial evidence supports the Board's findings of unfair labor practices by Farmers Energy under Section 8(a) of the National Labor Relations Act. Moreover, the Board did not abuse its discretion in fashioning remedies for those unfair practices. Accordingly, the petition for review is denied.

ENFORCEMENT GRANTED.