21 F.3d 420
 RICO Bus.Disp.Guide 8539
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Charla SCIVALLY, Plaintiff, Appellant,
v.
William R. GRANEY, ET AL., Defendants, Appellee.
 No. 93-2075
 United States Court of Appeals, First Circuit
 April 15, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Rya W. Zobel, U.S. District Judge ]
 Charla Scivally on brief pro se.
 Diane M. Kottmyer, Scott C. Moriearty, Deborah Kravitz and Bingham, Dana & Gould on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Cyr and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellant, Charla Scivally, appeals the dismissal of her amended complaint against appellees, Polaroid Corporation, Israel Booth, William Graney and Vincent Tognarelli, to recover damages for alleged violations of the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. Sec. 1964(c), and the grant of summary judgment to Graney and Tognarelli on appellant's claim seeking relief for alleged violations Sec. 101(a)(2) of Title I of the Labor-Management Reporting and Disclosure Act [LMRDA] (codified at 29 U.S.C. Sec. 411(a)(2)). We affirm.
 
 
 2
 * In 1946, Polaroid established the Polaroid Employees' Committee [the committee] to enhance communication between employees and management. Although its members were elected by the employees, the committee was treated as a department of Polaroid. Polaroid paid salaries to the committee members and funded all committee activities. From 1983 to 1992, Polaroid registered the committee as a "labor organization," pursuant to 29 U.S.C. Sec. 432. Appellee Graney was elected Chairman of the committee in 1989. Appellee Tognarelli was elected Vice Chairman the same year. Appellant Scivally was elected to the committee as a representative in February 1992.
 
 
 3
 Upon her election, Scivally sought to render the committee "more responsive to its membership and less subservient to employer Polaroid." After failing to reform the committee from within, Scivally filed a claim with the Department of Labor [DOL] asserting that the committee officers had been elected in violation of 29 U.S.C. Sec. 481. In June 1992, the DOL made preliminary findings that the manner of electing the committee officers was improper. Thereupon, Booth, the President and Chief Executive Officer of Polaroid, announced the committee was dissolved. Graney and Tognarelli in turn filed a "terminal report" notifying the DOL that the committee has been dissolved. See 29 C.F.R. Sec. 402.5. Upon receipt of the report, the DOL discontinued its investigation and dismissed Scivally's complaint on the ground there was no longer an entity falling within the Secretary's jurisdiction to investigate. Scivally filed her complaint in the district court on July 9, 1992.
 
 II
 
 4
 Scivally's RICO claims are predicated on her allegation that Polaroid and Booth acted illegally by paying "bribes" in the form of salaries and other payments to the members of the committee, in violation of 29 U.S.C. Sec. 186(a). She alleges that Graney and Tognarelli illegally accepted the bribes, in violation of 29 U.S.C. Sec. 186(b).[1] Since the payments occurred over several years, appellant alleges a pattern of racketeering activity. She asserts five categories of injuries: (1) lost wages and benefits the committee would have negotiated if it had been free from employer domination; (2) financial loss from an employee stock option plan [ESOP] in which she would not have participated if the committee had not been employer dominated; (3) lost opportunity to run for office and vote in union elections; (4) lost opportunity to exercise her rights as a member of a union under Title I of the LMRDA; and (5) the loss of her position as a committee representative. The district court dismissed all the counts for lack of standing.
 
 
 5
 In order to establish standing under RICO, a plaintiff must demonstrate that she was "injured in h[er] business or property" by the alleged racketeering activity, 18 U.S.C. Sec. 1964(c), and that the injury was proximately caused by the illegal activity, Holmes v. Securities Investor Protection Corp., 112 S.Ct. 1311, 1316-22 (1992). To establish the requisite proximate cause, a RICO plaintiff must show "some direct relation between the injury asserted and the injurious conduct." Id. at 1318. Since Scivally has failed to allege sufficient facts to show that her injuries were proximately caused (or in some cases caused at all) by the alleged illegal activity of appellees, we affirm the dismissal of her RICO complaints.
 
 
 6
 Scivally's complaint fails to allege sufficient facts to establish that appellees' pattern of bribery was the proximate cause of any loss of wages and/or benefits to her. Her assumption that, if the committee had not existed, the employees would have established an independent labor union, and that this union would have negotiated a better wage and benefit package than the employees in fact obtained, is too indirect and speculative to satisfy the standard of proximate cause. See, e.g., Associated General Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 542 (1983) (plaintiff whose injuries were indirect and speculative does not have standing to sue under section 4 of the Clayton Act) (applying traditional proximate cause standards); Holmes, 112 S.Ct. at 1317 (reasoning used to require showing of proximate cause in Associated General Contractors "applies just as readily to Sec. 1964(c)"). Scivally's alternate contention-that the employees would have obtained better wages if no employee organization of any sort had existed-is similarly indirect and speculative.
 
 
 7
 Scivally also alleges that she was "cheated" out of wages and benefits by Polaroid's adoption of an ESOP. The ESOP was established as a defense against a hostile takeover attempt and its propriety was challenged before the Delaware Court of Chancery. Shamrock Holdings, Inc. v. Polaroid Corp., 559 A.2d 257 (Del. Ch. 1989). Scivally contends that Polaroid used its control over the committee to induce Graney and Tognarelli to testify falsely before the Delaware court about employee sentiment toward the ESOP and that this testimony led the court to approve the ESOP. She alleges specifically that Graney and Tognarelli falsely testified that Polaroid employees would work more productively if the ESOP were adopted.
 
 
 8
 The record belies Scivally's claim. First, the testimony of Graney and Tognarelli was only a small fraction of the evidence on which the Delaware court relied in making its findings. Id. at 259 (in making its summary of factual findings court drew "from over 3,000 pages of trial transcript, more than 500 exhibits and extensive excerpts from the depositions of 34 witnesses"). Moreover, the court did not find that the ESOP would increase productivity but only that it would not lead to "decreased productivity." Id. at 272. Given these undisputed facts, Scivally cannot show that the allegedly perjured testimony was the proximate cause for the court's failure to set aside the ESOP. See Associated General Contractors, 459 U.S. at 542 (since alleged injuries may have been produced by independent factors, plaintiff has not shown they were proximately caused by defendant's acts).
 
 
 9
 Scivally alleges that the other injuries she suffered stem from the dissolution of the committee. Insofar as the dissolution marked the cessation of appellees' alleged racketeering activity, any injury suffered from the dissolution was not caused by racketeering activity.
 
 
 10
 Scivally, however, also alleges that the dissolution itself could not have occurred but for the racketeering activity of appellees Booth, Graney and Tognarelli. Even if this were so, appellant cannot show that she was injured in her business or property by the dissolution of the committee. According to appellant's allegations, the committee had for several years been funded by the company in violation of 29 U.S.C. Sec. 186(a) & (b). Since the committee had been supported by the very racketeering activity which forms the predicate acts of appellant's RICO complaint, the property to which Scivally alleges injury-her rights to participate in the committee-would not have existed absent the illegal racketeering activity. "Where, as here, the only property to which a plaintiff alleges injury is an expectation interest that would not have existed but for the alleged RICO violation, it would defy logic to conclude the [causation requisite to confer RICO standing] exists."[2] Heinold v. Perlstein, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (plaintiff who entered into contract because of allegedly illegal activity of defendant cannot recover for injury sustained because he lost the benefit of the bargain).
 
 III
 
 11
 Scivally alleges that appellees Graney and Tognarelli violated her right to free speech and assembly, pursuant to 29 U.S.C. Sec. 411(a)(2),[3] when they dissolved the committee without consulting its membership. The district court granted summary judgment to defendants.
 
 
 12
 Scivally cannot prevail on her Sec. 411(a)(2) claim because she cannot show that the dissolution of the committee interfered with any right she possessed to speak freely and associate with other members of a labor organization. Scivally alleges that the committee as it existed was employer dominated. Employer domination of a labor organization is an unfair labor practice in violation of 29 U.S.C. Sec. 158(a)(2). Moreover, it has long been the policy of the National Labor Relations Board [NLRB] that an employer dominated union must be disestablished.[4] See Carpenter Steel Co., 21 LLRM 1232, 1234 (1948) ("Where we find that an employer's unfair labor practices have been so extensive as to constitute domination of the organization, we shall order its disestablishment ... ") (stating NLRB policy); N.L.R.B. v. Northeastern Univ., 601 F.2d 1208, 1215 n. 7 (1st Cir. 1979) ("the Board applies the theory that once domination has been shown, no remedy short of complete disestablishment can ever be adequate"). While not necessarily requiring that the committee be dissolved, an order to disestablish would have required that Polaroid "cease to recognize [the committee] as the collective bargaining representative of [its] employees," Swift & Co. v. N.L.R.B., 106 F.2d 87, 95 (10th Cir. 1939), and almost certainly would have prevented the committee from ever being certified by the NLRB, see N.L.R.B. v. United Mine Workers, 355 U.S. 453, 458 (1958) (upon finding domination "Board usually orders the complete disestablishment of the union so that it can never be certified by the Board again"). In other words, upon disestablishment, the committee would no longer have been a "labor organization" within the meaning of 29 U.S.C. Sec. 402(i) & (j).[5] However, the rights protected by Sec. 411(a)(2), which Scivally alleges were violated by the dissolution, belong only to members of a "labor organization." Therefore, on the basis of Scivally's own allegations, even if Graney and Tognarelli had not dissolved the committee, the disestablishment of the committee would have been necessary to cure an unfair practice and that disestablishment would have extinguished any rights Scivally had under Sec. 411(a)(2). Since Graney and Tognarelli cannot be said to have violated a right which would have been extinguished regardless of whether or not they dissolved the committee, it was appropriate to grant them summary judgment.
 
 
 13
 Affirmed.
 
 
 
 [1]
 Section 186(a) provides, inter alia, that "it shall be unlawful for any employer ... to pay ... any money ... (3) to any employee or group or committee of employees ... for the purpose of causing such employees ... to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or (4) to any officer or employee of a labor organization ... with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization." Section 186(b) makes it unlawful to accept any payment prohibited by subsection (a)
 
 
 [2]
 Similarly, appellant suffered no cognizable injury in being deprived of her rights to participate in an independent labor organization prior to the dissolution of the committee. On the one hand, absent the alleged racketeering activity, the committee would not have existed. On the other, appellant has alleged no facts which would support the conclusion that but for Polaroid's establishment of the committee, Polaroid employees would have established an independent labor union
 
 
 [3]
 According to 29 U.S.C. Sec. 411(a)(2):
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions ...
 
 
 [4]
 Scivally concedes that, if a complaint of employer domination had been brought before the NLRB, the NLRB would have ordered the committee disestablished
 
 
 [5]
 According to 29 U.S.C. Sec. 401(i), for the purposes of chapter 11 of Title 29:
 "Labor organization" means a labor organization engaged in an industry affecting commerce ...
 According to Sec. 401(j):
 A labor organization shall be deemed to be engaged in an industry affecting commerce if it-
 (1) is the certified representative of
 employees under the provisions of the National
 Labor Relations Act ...; or
 (2) although not certified, is a national or
 international labor organization or a local
 labor organization recognized or acting as the
 representative of employees of an employer or
 employers engaged in an industry affecting commerce....