MR. JUSTICE HUNT,
dissenting:
I dissent. I would uphold the BPA decision that the School District violated Section 39-31-401, MCA, by paying the non-striking teachers for eighteen days of work where those teachers actually worked only one day. The facts as set out by the majority refer to the letter sent to all teachers by the School District, however the majority *61 opinion does not set out that letter in full. There is only one key sentence omitted. That sentence is the last sentence of the letter which reads:
“Teachers who do not report for duty by 8:00 a.m. on June 4, 1981 will be replaced.”
This sentence is the crux of that letter, as is shown by the fact that the School Board refers to this letter in the minutes of its meetings as the “replacement letter.” The letter further states, “Teachers returning June 4th to completion of the school year shall receive . . . an average 10.6% increase. . . .” Twenty teachers told the District’s agents that they would return on June 4. Seventeen actually worked June 4th, two of the teachers had a family emergency and one was sick. On the evening of June 4 the School District decided to close Missoula county high schools through Friday, June 5. On Sunday, June 7 the Board decided to close the schools for the remainder of the 1980-81 academic year.
The first issue raised on appeal, is whether the District Court erred in reversing the BPA’s finding of fact that non-striking teachers were not available and on-call after June 4, 1981. The School District urges that the payment for eighteen days of work when only one was in fact worked was approved in General Electric Co. (1948), 80 NLRB 510, 23 LRRM 1094. In General Electric, the employer paid employees who made their services available and remained on-call in a standby capacity. The employer refused to pay strikers. The NLRB held that the payment to non-strikers who did not work was not discriminatory because they remained subject to the employer’s call on a standby capacity which was compensable as a matter of law. Thus the factual issue of whether the returning teachers were on-call after June 4, 1981 becomes crucial. The BPA held they were not because the schools were closed and the school year was over. I agree that the returning teachers could not have remained on call for seventeen days after the schools had closed for the academic year, thus I would hold that General Electric has no application to this case. The conduct of the School District was to divide the work force into those who decided to go out on strike and those who did not and to reward the latter group.
The United States Supreme Court has set out the test to determine if discriminatory conduct constitutes an unfair labor practice in NLRB v. Great Dane Trailers, Inc. (1967), 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027, 1035.
“First, if it can reasonably be concluded that the employer’s dis *62 criminatory conduct was ‘inherently destructive’ of important employee rights, no proof of an antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is ‘comparatively slight,’ an antiunion motivation must be proved to sustain the charge if the employer has come forward with evidence of legitimate and substantial business justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in discriminatory conduct which could have adversely affected employee rights to some extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him. (Emphasis in original.)”
The payment for seventeen days of unworked time is not so insignificant that the teachers will not reflect before participating in future strikes. The hearing examiner estimated the cost to the District to be approximately $40,000 or $2,000 per employee. There have been many decisions that have found unlawful interference with the right to strike under similar circumstances. NLRB v. Great Dane, supra (grant of vacation benefits to only nonstrikers was an unfair labor practice); NLRB v. Erie Resistor Corp. (1963), 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (grant of super seniority to nonstrikers was an unfair labor practice); George Banta Co., Inc., Banta Div. v. NLRB (D.C. Cir. 1982), 686 F.2d 10 cert. den (1983), 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (grants of preferential reinstatement and seniority rights to employees who abandoned a strike early was an unfair labor practice.); Soule Glass and Glazing Co. v. NLRB (1st Cir. 1981), 652 F.2d 1055 (a 25 cents per hour wage increase to employees working as of the first day of a strike was an unfair labor practice.); NLRB v. Swedish Hospital Medical Center (9th Cir. 1980), 619 F.2d 33 (granting a one day vacation to non-strikers, those who returned early and those hired during the strike was an unfair labor practice); NLRB v. Rubatex Corp. (4th Cir. 1979), 601 F.2d 147 cert. den. (1979), 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (bonuses of $100 to $25 for those who worked during the strike paid after the strike was over were an unfair labor practice.); NLRB v. Frick Co. (3d Cir. 1968), 397 F.2d 956 (refusing vacation pay to strikers while paying non-strikers was an unfair labor practice.); Aero-Motive Manufacturing Co. (1972), 195 NLRB 790, 79 LRRM 1496, enf’d, (6th Cir. 1973), 475 F.2d 27 ($100 bonus to those who *63 worked through a strike, not awarded or announced until after the strike was an unfair labor practice.). The Court in Aero-Motive stated that by distinguishing “solely on the basis of who engaged in protected, concerted activity and who did not.” Such payments “. . . not only created a divisive wedge in the work force, but also clearly demonstrated for the future the special rewards which lie in store for employees who choose to refrain from protected strike activity.” Aero-Motive, 195 NLRB at 792, 79 LRRM at 1498. I would adopt the rationale of Aero-Motive and conclude that the conduct of the School District was inherently destructive of the employees right to strike. Further, the business justification advanced by the School District does not constitute a legitimate substantial business necessity. The District received two letters from counsel for one of the teachers claiming he was due compensation for eighteen days although the terms of the agreement were, “to the completion of the school year” which ended June 4th. Further, the business necessity advanced by the School District does not explain why all twenty teachers were paid for the remaining seventeen days, even though three of those teachers did not work and were not paid for June 4th.
I would reverse the decision of the District Court and affirm the decision of the BP A.
MR. JUSTICE SHEEHY and MR. JUSTICE MORRISON concur with the above dissent.