46 F.3d 339
 148 L.R.R.M. (BNA) 2392, 63 USLW 2544,
129 Lab.Cas. P 11,280
 BONNELL/TREDEGAR INDUSTRIES, INCORPORATED, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BONNELL/TREDEGAR INDUSTRIES, INCORPORATED, Respondent.
 Nos. 94-1390, 94-1553.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1994.
Decided Jan. 31, 1995.
 
 ARGUED: Robert J. Martin, Jr., Elarbee, Thompson & Trapnell, Atlanta, GA, for petitioner. Vincent J. Falvo, Jr., N.L.R.B., Washington, DC, for respondent. ON BRIEF: Douglas H. Duerr, Elarbee, Thompson & Trapnell, Atlanta, GA, for petitioner. Frederick L. Feinstein, Gen. Counsel, Linda Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Charles Donnelly, Supervisory Atty., Margaret Luke, N.L.R.B., Washington, DC, for respondent.
 Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.
 Petition denied and enforcement granted by published opinion. Judge MOTZ wrote the opinion, in which Judge MURNAGHAN and Judge NIEMEYER joined.
 OPINION
 MOTZ, Circuit Judge:
 
 
 1
 In these two consolidated cases, Bonnell/Tredegar Industries, Inc., a Virginia corporation ("Bonnell" or the "Company"), petitions for review of a Decision and Order of the National Labor Relations Board finding Bonnell in violation of the National Labor Relations Act. The Board seeks enforcement of its Order. Because Bonnell unilaterally modified the Christmas bonus provision in its collective bargaining agreement with United Steelworkers of America, AFL-CIO-CLC (the "Union"), in violation of Sec. 8(a)(1) and (5) of the Act, we deny Bonnell's petition for review and grant the Board's application for enforcement.
 
 I.
 
 2
 Prior to 1990, the Union had represented Bonnell's production and maintenance employees every year since 1972. In the parties' collective bargaining agreement effective from January 20, 1990 to January 19, 1993, as in each of the parties' previous agreements during the preceding eighteen years, Bonnell obligated itself to pay its employees a Christmas bonus. The 1990-1993 Agreement provided in pertinent part:
 
 ARTICLE XVI
 INDUSTRIAL RELATIONS PLANS
 
 3
 All employees in the plant are entitled to such service credit as accrued under the Company's continuity of service rules and the Company will recognize such service for participation in the following Company Industrial Relations Plans:
 
 1. Group Insurance Plan (Exhibit B)
 2. Vacation Plan (Article XII)
 
 4
 3. Military Leave Plan (Article XI and Article XV)
 
 4. Leave of Absence Plan (Article XV)
 5. Pension Plan (Exhibit C)
 6. Continuity of Service Rules (Exhibit C)
 7. Jury Duty Plan (Article XI)
 8. Funeral Leave Plan (Article XI)
 9. Christmas Bonus
 10. Thanksgiving Turkey
 
 5
 All of these plans shall remain in full force and effect during the term of this Agreement.
 
 
 6
 Consistent with the parties' prior six bargaining agreements, the 1990-1993 Agreement failed to specify a method for calculating the amount of each employee's Christmas bonus.[1] A Company representative, B.F. Wilburn, testified that the parties "did not actually discuss the Christmas bonus" during the negotiations for the 1990-1993 Agreement and that the subject only arose in conversation on one occasion, when Wilburn commented to Union officials that he disliked Christmas bonuses because "rarely did the Company get the recognition during contract negotiations for that type thing." The parties also entered into several Letter Agreements in 1990, addressing a myriad of issues but making no reference to the Christmas bonus.
 
 
 7
 During the previous eighteen years, however, the Company each year had paid its employees a Christmas bonus based on a formula of one hour's pay for each 32-hour week worked, up to a total of 40 hours' pay. Under this formula, each employee had typically received a Christmas bonus of approximately $300 to $400 each year. Furthermore, in March, 1990, shortly after entering into the 1990-1993 Agreement, Bonnell issued an employee handbook to be given to new employees detailing the Company's fringe benefits and stating that the Christmas bonus was calculated in accordance with this formula. In December, 1990, the first Christmas holiday period under the 1990-1993 Agreement, Bonnell paid its employees a Christmas bonus according to the formula employed for the previous eighteen years: one hour's pay for each 32-hour week worked, up to a total of 40 hours' pay.
 
 
 8
 A year later, on November 13, 1991, however, the Company notified its employees that "[t]he decision has ... been made to reduce the ... Christmas bonus this year to $100 per employee." On November 15, 1991, the Union advised the Company that it "strongly object[ed]" to the reduction of the Christmas bonus. Nevertheless, without negotiating to impasse, Bonnell paid each employee a Christmas bonus of $100 for Christmas 1991. The Union filed a grievance over the reduced bonus payment, but the Company refused to arbitrate the dispute. The parties subsequently negotiated to impasse over the amount of the 1992 Christmas bonus, after which Bonnell implemented its final offer by paying its employees a bonus similar to that paid in 1991.[2]
 
 
 9
 On July 17, 1992, the Union filed a complaint and notice of hearing against Bonnell with the National Labor Relations Board alleging certain violations of the National Labor Relations Act with respect to the 1991 Christmas bonus. After a hearing on November 6, 1992, an Administrative Law Judge issued a recommended Decision and Order on January 8, 1993, to which both the Union and Bonnell filed exceptions. While the matter was pending before the Board, the Union filed a second complaint on April 22, 1993, alleging similar violations with respect to the 1992 Christmas bonus, after which the Company and the Union filed a joint motion waiving a hearing and requesting a transfer to the Board and a consolidation of the two cases. The Board granted the joint motion on September 16, 1993 and issued a Decision and Order on February 28, 1994, in which it found that Bonnell had violated Sec. 8(a)(1) and (5) of the National Labor Relations Act by unilaterally reducing the amounts of the contractually mandated employee Christmas bonuses in both 1991 and 1992. Pursuant to 29 U.S.C. Sec. 160, Bonnell filed a petition for review, and the Board subsequently filed a cross-application for enforcement.
 
 II.
 
 10
 Section 8 of the National Labor Relations Act, 29 U.S.C. Sec. 158, provides in pertinent part:
 
 
 11
 (a) It shall be an unfair labor practice for an employer:
 
 
 12
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [providing for rights of employees to self-organization, collective bargaining, etc.];
 
 
 13
 * * * * * *
 
 
 14
 (5) to refuse to bargain collectively with the representatives of his employees....
 
 
 15
 Section 8(d) of the Act defines the duty to "bargain collectively" as the "mutual obligation of the employer and the representative of the employees to meet ... and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. Sec. 158(d). An employer's duty under Sec. 8(d) to engage in collective bargaining prohibits it from unilaterally terminating or modifying a collective bargaining agreement during the effective term of the agreement. Section 8(d) provides:
 
 
 16
 [W]here there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification [complies with certain requirements, including notifying and offering to meet and confer with the other party] ... and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract.
 
 
 17
 Id.; see also W.R. Grace & Co. v. Rubber Workers Local 759, 461 U.S. 757, 771, 103 S.Ct. 2177, 2186, 76 L.Ed.2d 298 (1983) ("Absent a judicial determination ... [the company] cannot alter the collective bargaining agreement without the union's consent. Permitting such a result would undermine the federal labor policy that parties to a collective bargaining agreement must have reasonable assurances that their contract will be honored") (citations omitted); Social Sec. Admin. v. Federal Labor Relations Auth., 956 F.2d 1280, 1287 (4th Cir.1992) ("no duty to engage in midterm bargaining over matters 'contained in' the collective bargaining agreement").[3] Moreover, a violation of Sec. 8(d) constitutes an unfair labor practice under Sec. 8(a)(1) and (5) of the Act. Allied Chemical & Alkali Workers, 404 U.S. at 160, 92 S.Ct. at 388; Herman Bros., Inc., 273 N.L.R.B. 124, 126 (1984), enforced, NLRB v. Herman Bros., Inc., 780 F.2d 1015 (3d Cir.1985).
 
 
 18
 The principal issue on appeal is whether Bonnell's established method of calculating Christmas bonuses was a term of the parties' 1990-1993 Agreement, the unilateral modification of which would have constituted a violation of the National Labor Relations Act. On appeal, the Board's findings of fact are "conclusive" if supported by "substantial evidence on the record considered as a whole." 29 U.S.C. Sec. 160(e), (f). Although ordinarily questions of law are reviewed de novo, "if the Board's construction of the National Labor Relations Act is defensible," it is entitled to considerable deference. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). No special deference is extended to the Board's interpretation of collective bargaining contracts, Litton Fin. Printing v. NLRB, 501 U.S. 190, 202-03, 111 S.Ct. 2215, 2223-24, 115 L.Ed.2d 177 (1991), but courts are "mindful of the Board's considerable experience in interpreting collective bargaining agreements." Jones Dairy Farm v. NLRB, 909 F.2d 1021, 1028 (7th Cir.1990).
 
 
 19
 Here, Bonnell's obligation to pay its employees a Christmas bonus was mandated by the express terms of the parties' 1990-1993 Agreement. Article XVI provides that employees "are entitled" to accrued service credit for a variety of "Industrial Relations Plans," including a "Christmas Bonus." Bonnell concedes as much; the Company claims, however, that the Agreement only requires it to pay some Christmas bonus without specifying an exact amount or method of calculation. Since no method for calculating that bonus is mandated by the express terms of the Agreement, Bonnell claims it was free to calculate the bonus in any way it chose.
 
 
 20
 The difficulty with this argument is that the Agreement, after stating "[a]ll employees ... are entitled" to participate in the "following Company Industrial Relations Plans" and then enumerating ten plans, including "Christmas Bonus," specifically provides with respect to "[a]ll of these plans" that they "shall remain in full force and effect during the term of this Agreement."[4] Were we to adopt Bonnell's argument, the phrase "remain in full force and effect" would be rendered meaningless, i.e., the phrase would add nothing to the Agreement's conceded requirement that some Christmas bonus be paid. "As in all contracts, the terms of a collective bargaining agreement should be construed so as to render none nugatory." Armistead v. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir.1991). Moreover, although neither the 1990-1993 Agreement nor any of its predecessors specified a method for calculating the amount of the Christmas bonus, Bonnell stipulated that it had employed the same formula for each of the previous eighteen years, with the Union's consent. Indeed, in March, 1990, Bonnell represented without reservation to its new employees that the Christmas bonus would be calculated using that same formula, and, in fact, bonuses in 1990 were paid according to that formula. Six times the parties renegotiated their collective bargaining agreement. Six times they failed to specify a method for calculating the amount of the Christmas bonus. Nevertheless, each year, for eighteen years, Bonnell employed the same formula.
 
 
 21
 In the face of these facts the Board concluded:
 
 
 22
 We find that the plain meaning of the parties' contractual agreement that the plan "shall remain in full force and effect during the term of this Agreement" is that the plan, and all its integral parts, one of which is the formula for calculating the Christmas bonus, shall remain unchanged during the term of the Agreement. Although the formula is not specifically set forth in Article XVI, it is an implicit term of the Agreement by virtue of the reference to required maintenance of a "plan" respecting the bonus.
 
 
 23
 We agree. "[C]ollective bargaining agreements may include implied as well as express terms." Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 311, 109 S.Ct. 2477, 2485, 105 L.Ed.2d 250 (1989); Hill v. Norfolk & Western Ry. Co., 814 F.2d 1192, 1198 (7th Cir.1987) (Posner, J.). An employer's established past practice can become an implied term of a collective bargaining agreement. See, e.g., Railway Labor Executives v. Norfolk & Western Ry. Co., 833 F.2d 700, 705 (7th Cir.1987) ("parties' collective agreement ... includes both the specific terms set forth in the written agreement and any well established practices that constitute a 'course of dealing' between the carrier and employees") (footnote omitted); Brotherhood of Maintenance of Way Employees v. Chicago & North Western Transp. Co., 827 F.2d 330, 334 (8th Cir.1987) (rule subjecting workers to discipline for possession, use, or sale of illegal drugs, which was not an express term of the collective bargaining agreement, "by virtue of the parties' longstanding and recognized custom and practice, has become an implied term in the agreement of the parties"), cert. denied, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 502 (1988). "Past practices rise to the level of an implied agreement when they have 'ripened into an established and recognized custom between the parties.' " Brotherhood Ry. Carmen v. Missouri Pacific Ry. Co., 944 F.2d 1422, 1429 (8th Cir.1991) (quoting Alton & S. Lodge No. 306 v. Alton & S. Ry., 849 F.2d 1111, 1114 (8th Cir.1988), cert. denied, 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989)).
 
 
 24
 Moreover, such implied terms cannot be modified under Sec. 8(d) of the Act without the parties' mutual consent. See Communications Workers, 280 NLRB 78, 82 (1986) (consistent thirty-two year practice of requiring the preparation, use, and cost-sharing of an official transcript of parties' non-expedited arbitration hearings was an implied term of collective bargaining agreement that could not be altered during the contract term except by mutual consent), enforced, NLRB v. Communications Workers, 818 F.2d 29 (4th Cir.1987); Chemical Workers, 228 NLRB 1101, 1101 (1977) (union representative violated Act by attempting to change an implied term of the bargaining agreement which had been established over the course of the previous ten years); cf. E.I. duPont de Nemours & Co., 294 NLRB 563, 563 (1989), remanded sub nom., Martinsville Nylon Employees Council v. NLRB, 969 F.2d 1263, 1269-70 (D.C.Cir.1992) (although combination of integration clause and no-oral-modification clause in renegotiated bargaining agreement precluded non-written modification of the agreement, case remanded to determine whether established past practice was implied term of agreement). It is no defense to an employer's midterm modification of a contract that it has bargained with the union to impasse concerning the terms it wishes to modify. Such terms are "frozen ... for the contract period involved absent mutual consent of the contracting parties to their alteration or qualification, or compliance with the provisions of Sec. 8(d)." NLRB v. Scam Instrument Corp., 394 F.2d 884, 886-87 (7th Cir.), cert. denied, 393 U.S. 980, 89 S.Ct. 449, 21 L.Ed.2d 441 (1968).
 
 
 25
 Thus, the Board correctly concluded that the long-standing Christmas bonus formula constituted an implied term of the parties' collective bargaining agreement. Where, as here, the Company consistently employed the same Christmas bonus plan for the previous eighteen years with the Union's full knowledge and consent, a reference to the Christmas bonus "plan" in the parties' 1990-1993 Agreement necessarily implies the substantive plan that was firmly in place prior to the effective date of the Agreement. Accordingly, given the parties' long-term practice and the unambiguous references in the Agreement to the Christmas bonus "plan," Bonnell's previous formula for calculating the bonus became clearly established as a term and condition of employment, implicit in the parties' 1990-1993 Agreement, that could not be altered except by mutual consent of the parties. There is no evidence of such consent here.[5]
 
 
 26
 Moreover, even if the long-standing Christmas bonus formula did not constitute an implied term of the Agreement, Bonnell's unilateral alteration of the bonus formula in 1991--without bargaining to impasse--constituted a violation of its duty to bargain under Sec. 8(d). This is so because, as noted within, the Christmas bonus was a mandatory term and condition of employment, and "making unilateral changes in the terms and conditions of employment during the pendency of an existing collective bargaining agreement ... violates [Sec. 8(d)'s] duty to bargain." International Broth. of Elec. Workers v. NLRB, 795 F.2d 150, 153 (D.C.Cir.1986). See also 4 T. Kheel, Labor Law Sec. 16A.02, at 16A-6 (1994). It is well recognized that just as an established past practice can become an implied term of a collective bargaining agreement, so too can such a practice become an implied term and condition of employment: "for purposes of determining whether a unilateral change has occurred ... an uninterrupted and accepted custom may become an implied term and condition of employment by mutual consent of the parties." Intermountain Rural Elec. Ass'n v. NLRB, 984 F.2d 1562, 1568 (10th Cir.1993) (citing Bodie v. City of Columbia, 934 F.2d 561 (4th Cir.1991)); Riverside Cement Co., 296 N.L.R.B. 840, 841 & n. 6 (1989). Of particular interest in this respect is International Broth. of Elec. Workers, 795 F.2d at 153, where the court noted that "a Christmas bonus, if tied to other remuneration and paid regularly over an extended period, becomes an element of wages and, therefore, a term and condition of employment that cannot be altered unilaterally" (citations and internal quotations omitted) (dicta).[6]
 
 III.
 
 27
 Bonnell offers several other reasons why, under the terms of the 1990-1993 Agreement, it expressly retained sole discretion to calculate the amount of the Christmas bonus.
 
 
 28
 First, the Company argues that while the methods for calculating other benefits were explicitly set forth in the 1990-1993 Agreement, the method for calculating the Christmas bonus was not, thereby vesting Bonnell with absolute discretion in that regard. Similarly, Bonnell contends that because the Agreement elsewhere made reference to past practices or agreements, the Agreement's failure to do so as to the Christmas bonus evidenced an intent to vest ultimate discretion in the Company. However, as the Board noted in its Decision and Order, it seems likely, in light of the parties' long-standing practice, that if the parties had intended to confer on the Company sole discretion to calculate the amount of the Christmas bonus, they would have so provided in their Agreement. Indeed, Article XVI itself provides for certain instances in which Bonnell may "make any changes in such plans" as necessary or required under specific circumstances, thereby demonstrating that when the parties intended to confer discretion on the Company to make changes in the benefit plans, they did so explicitly. The parties made no such provision for the Christmas bonus, and, in light of the consistent and extended use of the previous formula, their failure to do so indicated an intent to retain that formula "in full force and effect."
 
 
 29
 Second, Bonnell argues that because the arbitration clause contained in Article VIII of the 1990-1993 Agreement provides for the arbitrability of certain fixed standards of employment but not of the amount of the Christmas bonus, the parties thereby evidenced their intent to reserve the calculation of the bonus to the discretion of the Company. Although this of course may be one possible inference to be drawn from the language of the arbitration clause, it may also be, as the Board observed in its Decision and Order, that the parties simply preferred to resolve disputes over certain non-arbitrable subjects in other forums. Moreover, the arbitration provision specifically states that it does not "alter or change" any other part of the Agreement, which would include Bonnell's obligation to retain the Christmas bonus plan "in full force and effect."
 
 
 30
 Third, Bonnell contends that under the management rights clause contained in Article IV, it retained all rights "not specifically inconsistent with this Agreement," including discretion to calculate the amount of the Christmas bonus. Article VI does state in pertinent part:
 
 
 31
 [T]he management of the plant and the direction of the working force ... are rights solely vested in the Company.
 
 
 32
 The foregoing enumeration of Management's rights shall not be deemed to exclude other rights of Management not specifically inconsistent with this Agreement.[7]
 
 
 33
 However, Article IV also states that it is inapplicable to matters covered "by a specific provision of this Agreement," which again would include Bonnell's obligation under Article XVI to retain the Christmas bonus plan "in full force and effect." Because the Christmas bonus formula as employed by the Company for each of the past eighteen years is an implied term of the 1990-1993 Agreement, as binding and enforceable as any express term of the Agreement, the reservation of rights provided for in Article IV simply does not apply.
 
 
 34
 Finally, Bonnell argues that by virtue of the integration clause contained in Article XXIV, any past obligation the Company might have had with respect to the method of calculating the Christmas bonus was extinguished upon the effective date of the 1990-1993 Agreement. Article XXIV provides that:
 
 
 35
 This Agreement constitutes the sole and entire existing agreement between the Parties and supersedes all prior agreements, commitments, and practices, whether oral or written, between the Company and the Union or the Company and any of the covered employees, and expresses all obligations of, and restrictions imposed on, the Company.[8]
 
 
 36
 By its terms, however, Article XXIV has no effect on the agreements, commitments, practices, obligations, and restrictions that are incorporated in the Agreement itself, including Bonnell's obligation to retain, "in full force and effect," the Christmas bonus plan, the substance of which had been established by mutual consent of the parties over the course of the previous eighteen years. See Communications Workers, 280 NLRB at 83 (integration clause not applicable where past practice implicitly incorporated by express terms of bargaining agreement); cf. International Broth. of Elec. Workers, 795 F.2d at 153-54 (integration clause in renegotiated collective bargaining agreement eliminated past practice of Christmas bonus where no provision for bonus was otherwise made, implicitly or explicitly, in the agreement). Because the bonus plan as employed by Bonnell for each of the past eighteen years was an implied term of the 1990-1993 Agreement, the integration clause contained in Article XXIV by its plain language does not apply.
 
 
 37
 Bonnell unilaterally modified the terms of its 1990-1993 Agreement with the Union by reducing the amounts of the contractually mandated employee Christmas bonuses in 1991 and 1992, thereby violating Sec. 8(a)(1) and (5) of the National Labor Relations Act. Accordingly, we grant the Board's application for enforcement of its February 28, 1994 Decision and Order.
 
 
 38
 PETITION DENIED AND ENFORCEMENT GRANTED.
 
 
 
 [1]
 The 1990-1993 Agreement was the seventh collective bargaining agreement between these parties, and each agreement covered a three-year period
 
 
 [2]
 There is no indication as to the exact dollar amount of the 1992 Christmas bonus, apparently because the amounts varied from employee to employee. The parties have stipulated that the 1991 Christmas bonus was approximately 29 percent of the 1990 bonus, and that the 1992 Christmas bonus was approximately 30 percent of the 1990 bonus
 
 
 [3]
 Section 8(d) only prohibits the unilateral modification of "mandatory" terms (wages, hours, and other terms and conditions of employment) of a collective bargaining agreement. Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 186, 92 S.Ct. 383, 401, 30 L.Ed.2d 341 (1971). Bonnell, however, makes no claim that the Christmas bonus was not a mandatory term of the 1990-1993 Agreement, nor could it. See, e.g., NLRB v. Rubatex Corp., 601 F.2d 147, 150 (4th Cir.) (bonus is term of employment when tied to time worked), cert. denied, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); Isla Verde Hotel Corp. v. NLRB, 702 F.2d 268, 271 (1st Cir.1983) (bonus is term of employment when employer paid it for two years, discussed bonus with union, and announced plan to pay it)
 
 
 [4]
 Bonnell argues that because the Christmas bonus was not formally designated a "plan" under this provision of the 1990-1993 Agreement, whereas other programs, like the "Pension Plan " and the "Funeral Leave Plan," were so designated, the phrase "shall remain in full force and effect" is inapplicable. Considering the language of Article XVI in its entirety, this contention is meritless. Article XVI, specifically entitled "Industrial Relations Plans," clearly makes provision for "the following Company Industrial Relations Plans," listing ten enumerated benefits programs including "Christmas Bonus," and subsequently qualifies "[a]ll of these plans" and "such plans," again referring to the ten enumerated benefits programs, only seven of which are expressly denominated as "plans" in the Agreement
 
 
 [5]
 Bonnell's claim that the Board went beyond the four corners of the unambiguous Agreement, improperly incorporating "extrinsic" evidence of past practice, is meritless. Rather than using "extrinsic" evidence to interpret the Agreement, the Board found that the Agreement unambiguously incorporated, as an implied term, Bonnell's established practice of calculating Christmas bonuses. We, too, conclude that it is clear from the language of the Agreement itself that the parties intended to retain the existing Christmas bonus plan; no extrinsic evidence as to the parties' intent in that respect is necessary. Thus, the well-established past practice here is not "extrinsic" to the Agreement, but an implied term of it. See Martinsville Nylon Employees Council, 969 F.2d at 1269 (notwithstanding inclusion of integration clause in renegotiated agreement, "past practice may still inform the Board's understanding of what the written agreement means"); Communications Workers, 280 NLRB at 83 ("the past practice in question is not extrinsic but serves to define the provisions in the collective bargaining agreement"). See also Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 186 (7th Cir.1985) ("there is no rule that an arbitrator, in order to find an implied condition, must first find the language of the [labor] contract to be ambiguous"), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)
 
 
 [6]
 A union's right to bargain over a mandatory term can be waived, but the party asserting waiver must show the right to bargain was clearly and unmistakably relinquished. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). The Board found there was no evidence of clear and unmistakable waiver here. The Company's only response to this finding seems to be that the "management rights and integration clauses [in the 1990-1993 Agreement] make clear that the Company was authorized to change the bonus without bargaining." As explained in Part III infra, we conclude that this is simply not the case
 
 
 [7]
 The record indicates that this provision remained unchanged from the parties' 1987-1990 collective bargaining agreement
 
 
 [8]
 Again, the record indicates that this provision remained unchanged from the parties' previous agreement